THE CREDITORS' LAW GROUP, APC
David J. Richardson (State Bar No. 168592)
djr@thecreditorslawgroup.com
Laura L. Buchanan (State Bar No. 156261)
llb@thecreditorslawgroup.com
2301 Hyperion Avenue, Ste. A
Los Angeles, CA 90027
Telephone:     (323) 686-5400
Facsimile:     (323) 686-5403

Attorneys for Linda Cotterman as temporary
Conservator of the Person and Estate of Jean
Miho Tanaka, Christine Tanaka, and Wesley
Tanaka

Mary G. Creutz (State Bar No. 25614)
www.reginecc@aol.com
11661 San Vicente Blvd Ste 206
Los Angeles, CA 90049
Tel: (310) 826-3545
Fax: (310) 826-4735

Attorney for Jean Miho Tanaka

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>The Jean Tanaka Trust, Jeannie Tanaka Trust,<br><br>Debtor. | Case No. 2:11-bk-35577-BR<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CHAPTER 11 CASE; DECLARATIONS IN SUPPORT THEREOF**<br><br>**Hearing**<br>Date:    TBD<br>Time:    TBD<br>Judge:  Hon. Barry Russell<br>          Courtroom 1668<br>          255 East Temple Street<br>          Los Angeles, CA  90012 |

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A.,Los Angeles, CA 90027
Tel. (323) 686-5400     Fax (323) 686-5403

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ……………………………………………………………………..3

II. STATEMENT OF FACTS ………………………………………………………….4

    **A.**  General Background………………………………………………………….4

    **B.**  Litigation involving The Jean Tanaka Trust….……………………………….4

II. ARGUMENT……………………………………………………………………...8

    **A.**  The Case must be dismissed because the Trust is not eligible for relief as a debtor under chapter 11 pursuant to 11 U.S.C.S. § 109...……………………………….8

    **B.**  This case must be dismissed because Jeannie Tanaka was not authorized to act on behalf of the Trust………………………………………………………………11

    **C.**  The Case must be dismissed for bad faith filing under Section 1112(b)…………...12

    **D.**  The Automatic Stay Should Be Annulled Nunc Pro Tunc to the Petition Date……13

III. CONCLUSION…………………………………………………………………...14

**The Creditors' Law Group, a Professional Corporation**
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

i

1

# TABLE OF AUTHORITIES

2

In re Avila, 311 B.R. 81, 83 (Bankr. N.D. Cal. 2004)……………………………………………….13

3

In re Ellis, 60 B.R. 432, 435 (B.A.P. 9th Cir. 1985)… ………………………………………...13

4

MacDonald v. MacDonald (In re MacDonald), 755 F.2d 715, 716 (9th Cir. 1985) (lifting stay)…...13

5

Marinkovic v. Midland Loan Servs. (In re Marinkovic), 2006 Bankr. LEXIS 4876
(B.A.P. 9th Cir. Nov. 8, 2006)……………………………………………………………………...10

6

Morrissey v. Commissioner of Internal Revenue Service, 296 U.S. 344, 359,
56 S. Ct. 289, 80 L. Ed. 263 (1935)……………………………………………….…………………10

7

8

In re Nat'l Envtl. Waste Corp., 129 F.3d 1052, 1054 (9th Cir. 1997)………………………………13

9

In re O'Loughlin, 40 B.R. 707, 709 (Bankr. D. Mass. 1984)………………………………………...13

10

In re Pace, 376 B.R. 334 (Bankr. M.D. Fla. 2007)……………………………………………………8

11

Price v. Gurney, 324 U.S. 100, 105-107 (1945)……………………………………………….11, 12

12

In re Sagewood Manor Assocs. Ltd. Pshp., 223 B.R. 756, 761 (Bankr. D. Nev. 1998)……………..13

13

In re Spenard Ventures, Inc., 18 B.R. 164, 166, 6 C.B.C. 156 (Bkrtcy.Alaska 1982)………………13

14

In re Sung Soo Rim Irrevocable Intervivos Trust, 177 B.R. 673 (Bankr. C.D.
Cal. 1995)………………………………………………………………………………...8, 9, 10, 11

15

16

In re Vivian A. Skaife Irrevocable Trust Agreement #1, 90 B.R. 325, 328
(Bankr. E.D. Tenn. 1988).. ………………………………………………………………………11

17

## FEDERAL STATUTES

18

11 U.S.C. § 109(a).. ……………………………………………………………...1, 8, 14

19

11 U.S.C. § 1112(b)….. ………………………………………………………………...1, 12, 14

20

## LOCAL BANKRUPTCY RULES

21

Local Bankruptcy Rule 1017-2 (a)(1)…… ……………………………………………………….4

22

23

24

25

26

27

28

**The Creditors' Law Group, a Professional Corporation**
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

**The Creditors' Law Group, a Professional Corporation**
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400      Fax (323) 686-5403

1  TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE

2  UNITED STATES TRUSTEE; AND THE PARTIES ENTITLED TO NOTICE:

3      PLEASE TAKE NOTICE that at the time and place set by the court pursuant to the

4  Application for Order Setting Hearing on Shortened Notice, filed concurrently herewith, Linda

5  Cotterman as temporary Conservator of the Person and Estate of Jean Miho Tanaka, Christine

6  Tanaka, and Wesley Tanaka, and Jean Miho Tanaka, by and through her counsel (together, the

7  "Movants"), shall appear before the Honorable Barry Russell for the United States Bankruptcy Court

8  for the Central District of California in Courtroom 1668 of the Los Angeles Division courthouse,

9  255 East Temple Street, Los Angeles, CA  90012, and move this Court for an order dismissing the

10  above-entitled chapter 11 case, and annulling the automatic stay nunc pro tunc to the petition date

11  ("Bankruptcy Case") ("Motion").

12      PLEASE TAKE FURTHER NOTICE that this Motion is made on the grounds that the

13  purported debtor in this case, erroneously named as "The Jean Tanaka Trust, Jeannie Tanaka Trust"

14  (the "Debtor"), is a family trust established for the benefit of Jean Miho Tanaka that is not an

15  eligible debtor under Section 109(a) of the Bankruptcy Code; this case was unauthorized and filed in

16  bad faith under Section 1112(b) of the Bankruptcy Code by Jeannie Tanaka, the individual who filed

17  the voluntary chapter 11 petition on behalf of the Trust, because she did not have the requisite

18  authority under state law and the Trust agreement to authorize the bankruptcy filing.

19      PLEASE TAKE FURTHER NOTICE that the Motion is based on the attached Memorandum

20  of Points and Authorities and Declarations of Linda Cotterman and Christine Tanaka, the arguments

21  of counsel, the record in this case, any oral or documentary evidence presented at or prior to the

22  hearing on the Motion, and any other admissible evidence properly brought before the Court.  In

23  addition, the Movants request that the Court take judicial notice of all documents filed with the

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1  Court in this case and the exhibits attached hereto, which were filed with the Superior Court in the

2  related state court conservatorship proceeding involving the Movants and Jeannie Tanaka.

3

4  DATED: July 28, 2011            /s/ Laura L. Buchanan
                                   LAURA L. BUCHANAN
5                                  DAVID J. RICHARDSON
                                   THE CREDITORS' LAW GROUP, APC
6                                  Attorneys for Linda Cotterman as temporary
                                   Conservator of the Person and Estate of Jean Miho
7                                  Tanaka, Christine Tanaka, and Wesley Tanaka

8

9

10                                 MARY G. CREUTZ
                                   Attorney for Jean Miho Tanaka

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste  A, Los Angeles, CA  90027
Tel. (323) 686-5400    Fax  (323) 686-5403

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Linda Cotterman as temporary Conservator of the Person and Estate of Jean Miho Tanaka, Christine Tanaka, and Wesley Tanaka, and Jean Miho Tanaka, by and through her counsel (together, the "Movants") hereby move this Court for entry of an order dismissing the above-captioned case, and annulling the automatic stay nunc pro tunc to the petition date, for the reasons discussed herein.

The purported Debtor in this case – the erroneously named Jean Tanaka Trust, Jeannie Tanaka Trust – is not an eligible debtor. To whatever extent that the Trust was validly created,[1] it is a family trust created under the provisions of the California Probate Code. It is not a business trust, and therefore it is not eligible to be a debtor in a bankruptcy case. Jeannie Tanaka purported to act as trustee of the Trust when she filed the instant case, but the case was filed one day after the Linda Cotterman (the "Conservator") obtained an order from the Superior Court that suspended Jeannie Tanaka as trustee of the Jean Tanaka Trust (the "Trust"). Thus, Jeannie Tanaka lacked the authority to file the instant case on the Petition Date.

The Movants have been battling with Jeannie Tanaka for years in order to ensure that her mother – Jean Miho Tanaka (the "Conservatee") – who has dementia, gets the assistance she needs for her ongoing care. This improperly filed chapter 11 case is simply the latest effort by Jeannie Tanaka to disregard California probate law. There is no reorganization at issue in this case. Rather, it is a simple probate dispute between Jeannie Tanaka, on one side, and the Conservatee, the Conservator, Christine Tanaka, Wesley Tanaka and the California Superior Court on the other, and as such it belongs solely in the California state courts. Further, this is a case that was filed in bad faith as Jeannie Tanaka and her counsel were well aware of these fatal issues. Therefore, this case must be dismissed.

---

[1] Christine and Wesley Tanaka and Mary Creutz, counsel for the Conservatee, deny that the Trust was validly created, as explained below.

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

## II.

## STATEMENT OF FACTS

**A.    General Background.**

On June 14, 2011 (the "Petition Date"), Jeannie Tanaka filed a petition for relief for the Trust as the debtor in this case under chapter 11 of the Bankruptcy Code in this Court, erroneously naming the Debtor as "The Jean Tanaka Trust, Jeannie Tanaka Trust."

The Conservatee is the mother of Jeannie Tanaka ("Jeannie")[2] as well as Christine Tanaka ("Christine") and Wesley Tanaka ("Wesley"), who are two of the Movants.

No schedules or other documents, which were required to be filed within fourteen (14) days of the filing of this case, have been filed as required by Local Bankruptcy Rule 1017-2 (a)(1).  A true and correct copy of the docket in this case ("Docket") is attached hereto as Exhibit A.[3]  On information and belief, no one appeared at the 341(a) meeting of creditors on behalf of the purported debtor in this case.

**B.    Litigation involving The Jean Tanaka Trust.**

The Conservatee executed the Trust[4] on June 5, 2009.  A true and correct copy of the Trust is attached as Exhibit B.

The most significant asset that is ostensibly in the Trust is the real property located at 949 Malcolm Avenue, Los Angeles, California 90024 (the "Property").  The Property is the Conservatee's long-time residence, but on July 14, 2010, the Conservatee temporarily moved in with Christine at her home located at 1912 Benecia Avenue, Los Angeles, CA 90025 (the "Benecia Property") because of the concerns of Christine and Wesley for the Conservatee described below. The Property is encumbered by a reverse mortgage of approximately $900,000 that was placed on

---

[2]    The Motion uses first names of the Tanaka children because they have the same last name.  No disrespect is intended.

[3]    This case should also be dismissed for failure to comply with Local Bankruptcy Rule 1017-2 (a), which requires timely filing of required documents and "[i]f the required documents are not filed within 14 days from the filing of the petition or an extension of such 14-day period granted by an order of the court, the case will be dismissed without further notice or hearing."

[4]    The name of the Trust is "The Jean Tanaka Trust."  Because it is the only trust at issue among the Movant and Jeannie Tanaka, the Movant believes that the reference to "Jeannie Tanaka Trust" in the name of the debtor on the petition was an error and that Jeannie Tanaka intended to file the petition for The Jean Tanaka Trust (i.e., the Trust).

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

1   the Property prior to the conservatorship of the Conservatee, and a California State Franchise Tax

2   lien of about $1,400,000.  It is unclear whether there is any equity in the home above those claims.

3       The Trust was executed by the Conservatee after her husband passed away and while Jeannie

4   lived with her, and Christine and Wesley believe that the execution of the Trust document was

5   manipulated by Jeannie as a result of undue influence over the Conservatee.  Declaration of

6   Christine Tanaka ("Tanaka Decl.") at ¶ 4.  Jeannie had lived with Jean and her husband, Togo, prior

7   to his death and provided care for them, and Jeannie had stayed in the Property with Jean after his

8   death.  Id. at ¶ 5.  Christine and Wesley became concerned about Jeannie's treatment of their mother

9   when (among other things) they sought to see her repeatedly but were repeatedly given excuses for

10  why their mother could not or would not see them, and as she was showing signs of dementia, which

11  was later diagnosed, as explained below.  Id.

12      In 2009, Christine and Wesley filed an action to create a conservatorship for Jean Tanaka as

13  ConservateeDeclaration of Linda Cotterman ("Cotterman Decl.") at 10.  That action was filed in the

14  Superior Court of California for the County of Los Angeles ("Superior Court") and is entitled, In Re

15  The Conservatorship of Jean Miho Tanaka LASC C/N BP 117240 ("Conservatorship Proceeding").

16  Mary Creutz was appointed by Superior Court from the Probate Volunteer Panel to represent the

17  Conservatee.  Id. at ¶ 10.  In that action, a temporary Conservator was appointed, and the

18  Conservator was appointed to replace the first conservator.  Id.  The validity and enforceability of

19  the Trust have been questioned in the Conservatorship Proceeding, and the Movants reserve all of

20  their rights with respect to whether or not the Trust was actually created and/or is enforceable.  Id.

21      Since the filing of the Conservatorship Proceeding, the Movants have battled with Jeannie

22  over many issues related to the Conservatee's care and her property.  Most recently, the Conservator

23  filed the "Temporary Conservator Linda Cotterman's Ex Parte Application For: (I) The Issuance Of

24  An Order To Show Cause As To Why Respondent Jeannie Tanaka Should Not Be Held In Contempt

25  For Violating The Court's May 20, 2010 Order, Or In The Alternative, (II) For An Order Shortening

26  Time For A Hearing On Petitioner's Petition To Determine Title To Real And Personal Property

27  Improperly Taken From Conservatee" (the "Ex Parte Application") in the Conservatorship

28  Proceeding.  Cotterman Decl at ¶ 11.  On May 20, 2010, the Superior Court issued two orders, one

of which appointed the Conservator to assume the role as Conservatee's temporary conservator, and

one of which provided that Jeannie was not to live in the Property and was only to visit the house

pursuant to monitored visits.  Id. at ¶ 12.  The Conservator filed the Ex Parte Application because

(among other things): (i)  Jeannie had violated those orders and had changed the locks on the

Property without prior notice to the Conservator and had refused to return possession or provide the

Conservator with a copy of the keys; (ii) it appears that Jeannie had been removing Conservatee's

personal property and had boasted that she intended to rent the Property; and (iii) Jeannie had been

observed on site very late in the evening and may have been residing in the Property or renting it.

Id.  Jeannie's plans to rent the Property are critical, as the reverse mortgage was premised upon the

Conservatee having residence at the Property, and any rental of the Property will risk a default of

that mortgage.  Id.

On June 13, 2011 (the day before the Petition Date), at the hearing on the Ex Parte

Application, the Superior Court ordered that Jeannie be suspended as trustee of the Trust:

> COURT: . . . SO AT THIS POINT, I'LL SUSPEND JEANNIE AS THE TRUSTEE OF THE TRUST. THERE HAS BEEN A PETITION FILED. I HAVE JURISDICTION OVER THE TRUST ON THAT BASIS AND I'M TAKING THE TRUST UNDER COURT SUPERVISION. SPECIFICALLY AT THIS MOMENT IN TIME, JEANNIE IS SUSPENDED AND SHE'S TO PROVIDE ACCESS TO THE PROPERTY FORTHWITH TO [Conservator] MRS. COTTERMAN AND/OR [Conservator's counsel] MR. SCHOMER AND THEY HAVE THE AUTHORITY TO GO IN AND HAVE THE LOCKS CHANGED AND TAKE AN INVENTORY OF WHAT THERE IS AND THE STOCK OF THE CONDITION OF THE PROPERTY.

Transcript of hearing at p. 35, lines 2-14; a true and correct copy of the relevant pages of the

transcript from that hearing is attached hereto as Exhibit C.  The Superior Court went on to make it

clear that its order was effective immediately and overruled a challenge by Jeannie's counsel.

Transcript at p. 35, lines 15-36 ("I've already made the orders that I've made, though.  Those will

stand.").

Also in that hearing on June 13, 2011, the Superior Court noted that it had been working very

hard on that court's written decision on the various petitions in the Conservatorship Proceeding by

Jeannie and the Movants seeking appointment of a permanent conservator for the Conservatee, and

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

6

the decision was "ready to go out as soon as I can proofread it and get it to the clerk and she has time

to make copies and get it out.  It will be going out.  So nothing that happens here today is going to

change that."  Transcript at p. 22, lines 21-25.

The following day, on June 14, 2011, Jeannie filed the instant chapter 11 case.

On June 15, 2011, the Superior Court entered its Tentative Statement of Decision pursuant to

CCP § 632 and C.R.C. § 3.1590 ("Conservatorship Ruling") on the various petitions in the

Conservatorship Proceeding by Jeannie and the Movants seeking appointment of a permanent

conservator for the Conservatee; a true and correct copy of the Conservatorship Ruling is attached

hereto as Exhibit D.  The Conservatorship Ruling includes detailed findings about the Conservatee's

health and welfare, including a finding that the Conservatee has dementia and that the

conservatorship is necessary.  Conservatorship Rule at p. 30 (JTD #3 and #6), and orders, including

that the Conservator "is suitable and qualified and is hereby appointed Conservator of the Person and

Estate."  Id. (JTD #3).  The Court also described Jeannie's behavior that has jeopardized the

Conservatee.  E.g., Conservatorship Ruling at p. 28 (I.1.c: "The court finds that Jeannie puts her

belief system, and Jeannie's own interests before those of Mrs. Tanaka.  In addition Jeannie displays

a lack of insight to the proper care of Mrs. Tanaka . . . ."); Conservatorship Ruling at p. 29 (I.1.c.2.f:

"Regarding Mrs. Tanaka's finances, i. Jeannie had a new estate plan drafted for Mrs. Tanaka at a

time when she did not have capacity to do so. After Mrs. Tanaka, Jeannie is the sole beneficiary . . .

.").

On June 23, 2011, the Superior Court formally entered its Order on the Ex Parte Application;

a true and correct copy of that Order is attached hereto as Exhibit E.  That formal order was entered

pursuant to the Superior Court's orders that were made on the record at the hearing on June 13,

2011, including the order suspending Jeannie as trustee.  See Transcript at p. p. 35, lines 15-36.

On July 22, 2011, Jeannie filed a notice of removal [Docket No. 12] ("Notice of Removal"),

removing the Conservatorship Proceeding to this Court.  A true and correct copy of the Notice of

Removal is attached hereto as Exhibit F.  In that notice, Jeannie asserts that the "Trust qualifies as a

business trust with a single income producing real property asset."  Notice of Removal at p. 5, lines

6-7.  This position, though, is contrary to her previous treatment of the Trust as a family trust.  On

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA  90027
Tel.  (323) 686-5400    Fax  (323) 686-5403

7

February 22, 2011, Jeannie filed that certain Correcting Deed ("Deed"), a true and correct copy of

which is attached as <u>Exhibit G</u>.  The purpose of that deed was "to correct the Quitclaim Deed dated

June 5,2009, recorded as document number 20091003613 recorded July 2,2009 on the books and

records of the County of Los Angeles, transferring title to the subject real property from Jean Miho

Tanaka, aka Jean Miho Tanaka to the Jean Tanaka Trust, to show title in the name of the Trustee of

the Jean Tanaka Trust, Jeannie Tanaka and to indicate the date of the Jean Tanaka Trust."  Deed at p.

3.  Therein, Jeannie took the position that no documentary transfer tax was due because "[t]his

conveyance transfers an interest into or out of a living trust, R & T 11930."  <u>Id</u>.

        In addition, Jeannie implied in Notice of Removal (at p. 7) that the Trust engages in a

business by renting the Property, but that conclusion is based on her own wrongful possession and

rental of the Property, which the Conservator sought to address by the Ex Parte Application.

        Finally, the Trust has not been taxed as a partnership or a corporation under California law,

and there is no evidence that the Trust was authorized to, or actually was, doing business or that it

had complied with California's fictitious name statutes. Cotterman Decl. at ¶ 24.

## II.

## ARGUMENT

**A.    The Case must be dismissed because the Trust is not eligible for relief as a debtor under chapter 11 pursuant to 11 U.S.C.S. § 109.**

        Section 109 of the Bankruptcy Code sets forth the limitations on who may be a debtor.  11

U.S.C. § 109(a).  Section 109(a) establishes that "only a *person* that resides or has a domicile, a

place of business, or property in the United States, or a municipality, may be a debtor under this

title."  <u>Id</u>. (*Emphasis added*).  Section 101(41) defines "person" as including any "individual,

partnership, and corporation, but does not include governmental units . . . ."  "Nor does it include

trusts.  Trusts and governmental units are expressly encompassed within the broader term, 'entity,'

defined in § 101(15).  By limiting eligibility to 'persons,' rather than 'entities,' Congress

intentionally excluded trusts as a category from filing bankruptcies."  <u>In re Sung Soo Rim

Irrevocable Intervivos Trust</u>, 177 B.R. 673, 675 (Bankr. C.D. Cal. 1995); <u>In re Pace</u>, 376 B.R. 334,

336 (Bankr. M.D. Fla. 2007) ("Although the trust was established to hold and conserve property, the

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

8

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

trust's purpose was merely to preserve the res and not to conduct business and to share gains.

Furthermore, the trust does not have continuity of life; rather, it terminates upon death.").

A "business trust" may file a bankruptcy petition because business trusts "are expressly

included within the statutory definition of 'corporation' set forth in § 101(9)(A)(v). They are

therefore 'persons' eligible to be debtors. The Bankruptcy Code, however, does not define the term

'business trust.'"  Id.  As the court in Sung Soo explained, a trust may be a business trust under state

law or federal law.  Id. at 676-77.  Therefore, the first question in the instant case is whether the

Trust that is the purported Debtor in this case is a "business trust" under California law.  The Trust's

formation documents provide that it shall be subject to California law.  See Section 8.10 of the Trust

("California law shall govern the validity, construction, interpretation, and administration of all

trusts under this instrument.").  Under California law, this Trust cannot qualify as a "business trust"

as it is not taxed as a partnership or corporation, and was formed as a family trust under the

California Probate Code:

> Under California law, "business trusts" are by *definition* entirely distinct from "trusts" created under the California Probate Code. The Probate Code expressly excludes from its scope trusts that are "taxed as partnerships or corporations." *Cal. Prob. Code § 82(b)(6)* (West 1991). Traditional trusts established to protect or preserve property are usually created as part of estate planning and are subject to state probate law and probate court supervision.

> In this case, the Trust Agreement incorporates by reference the Uniform Trustees' Powers Act and the California Probate Code. Cal. Prob. Code §§ 16200-16249 (West Supp. 1994). By contrast, there is no evidence that the Rim Trust was taxed as a partnership or a corporation under California law; that it was authorized to, or actually was, doing business; or that it had complied with California's fictitious name statutes, as would be required of a "business trust." Under the circumstances, the Rim Trust is not a formal "business trust" under California law.

Sung Soo, 177 B.R. at 677.

Here, the Trust was clearly a traditional trust set up to provide for the Conservatee's welfare

during life and for distribution of assets upon her death.  See, e.g., Article 3 of the Trust (entitled,

"Trust During Settlor's Life"); Article 4 of the Trust (entitled, "Trust Allocation at Settlor's Death");

Section 3.7 of the Trust (Trust is a revocable trust).  The Trust also relies on and addresses various

provisions of the California Probate Code.  See Section 4.3 of the Trust ("The Settlor directs the

Trustee to charge and collect all federal death taxes . . . in accordance with the California Probate

9

Code provisions for death tax apportionment and allocation."); Section 7.2 of the Trust ("Except as provided in this paragraph, any reports or accounts otherwise required by the California Probate Code are hereby waived to the fullest extent of the law.").  In addition, the Trust was not taxed as a partnership or a corporation under California law, and there is no evidence that the Trust was authorized to, or actually was, doing business or that it had complied with California's fictitious name statutes, as would be required of a "business trust."

Courts have repeatedly found that a business trust is a trust that has the following corporate attributes:

(1) creation and maintenance for a business purpose or function;

(2) title to property held by trustees;

(3) centralized management;

(4) continuity of business existence uninterrupted by death among beneficial owners;

(5) transferability of interests; and

(6) limited liability.

Sung Soo, 177 B.R. at 677, citing Morrissey v. Commissioner of Internal Revenue Service, 296 U.S. 344, 359, 56 S. Ct. 289, 80 L. Ed. 263 (1935); see Marinkovic v. Midland Loan Servs. (In re Marinkovic), 2006 Bankr. LEXIS 4876, 6 (B.A.P. 9th Cir. Nov. 8, 2006) (Court noted that the bankruptcy court "dismissed the case because the Family Trust was not eligible for relief under chapter 11.").  This Trust has none of these attributes.  It was created and maintained to provide for the welfare of the Conservatee, not a business purpose or function.  See Articles 3 and 4 of the Trust. Title to property is held by the Trust, not the trustee.  See the Declaration of Trust, which is prior to Article 1.  There is no centralized management.  See Article 6 of the Trust (entitled, "Trustee Management Powers").  The Trust's existence will be interrupted by death of the Conservatee.  See Article 4 of the Trust.  Interests of the beneficiaries are not transferable by them.  See Section 8.1 of the Trust.  And the beneficiaries are not provided limited liability by the Trust.

Courts have also applied a "control" test to determine if a trust is a "business trust", wherein the focus is "on the scope of authority vested in the trustee. If the trustee has the exclusive authority

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400     Fax (323) 686-5403

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

1  to manage the business, then it is treated as a traditional [family] trust. Where the beneficiaries are

2  vested with control, the trust is treated as a 'business trust.'" Sung Soo, 177 B.R. at 678. The Trust

3  fails this test because the trustee has the exclusive authority to manage the Trust. See Article 6 of

4  the Trust (entitled, "Trustee Management Powers").

5      Courts have also tested whether a trust was a family and estate planning trust, rather than a

6  business trust. In particular, "[i]ntervivos trusts, established for the support or personal benefit of

7  specified family members have uniformly failed to qualify as 'business trusts.' See, e.g., In re Betty

8  L. Hays Trust, 65 Bankr. 665, 668 (Bankr. D. Neb. 1986) (Mahoney, B.J.) (holding that an intervivos

9  family trust is not an eligible debtor and dismissing debtor's case)." Sung Soo, 177 B.R. at 678. In re

10  Vivian A. Skaife Irrevocable Trust Agreement #1, 90 B.R. 325, 328 (Bankr. E.D. Tenn. 1988) ("The

11  court concludes that the trust in the instant case is a family trust created exclusively for the benefit of

12  the grantor's children and that the conduct of business activities is but one of a number of methods

13  by which the trustee may further the purpose of the trust. The motion to dismiss the debtor's Chapter

14  11 case will accordingly be granted."). As noted above, the terms of the Trust are for the support or

15  personal benefit of specified family members, not business purposes.

16      Although Jeannie now asserts in the Notice of Removal that the Trust is a business trust,

17  Jeannie previously took the inconsistent position that the Trust is a family trust. Deed at p. 3 (no

18  documentary transfer tax was due because "[t]his conveyance transfers an interest into or out of a

19  living trust, R & T 11930."). And her wrongful efforts to rent the Property cannot turn this family

20  trust into a business trust.

21      Based on the foregoing, the Trust fails all of these tests, is not a business trust, and is not

22  eligible to be a debtor, so this case must be dismissed.

23  **B.    This case must be dismissed because Jeannie Tanaka was not authorized to act on
       behalf of the Trust.**

24
       A person filing a voluntary bankruptcy petition on a corporation's behalf must be authorized

25  to do so, and the authorization must derive from state law. Price v. Gurney, 324 U.S. 100, 105-107

26  (1945). In Price, the bondholders, who were in control of the company, sought to foreclose on a lien

27  on company property and successfully obtained judgment in a foreclosure proceeding. Id. at 101. A

28

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

group of shareholders moved to set aside the judgment and the motion was denied.  Id. at 102.

Subsequently, the group of shareholders filed bankruptcy on the company's behalf.  Id.  The

bondholders and the company filed motions to dismiss the petition on the grounds that the board of

directors did not authorize the filing.  Id. at 103.  The district court dismissed the petition.  The

shareholders successfully appealed to the Sixth Circuit on the theory "that the directors have

breached their trust and have caused the corporation to commit acts which are confiscatory of the

stockholders' interests, that the corporation has a defense against or a remedy in alleviation of the

foreclosure action which the directors refuse to invoke, and that therefore the stockholders under the

familiar rules governing derivate actions may proceed on behalf of the corporation."  Id. at 104.

The Supreme Court reversed the Sixth Circuit and affirmed the dismissal, holding that if a

court "finds that those who purport to act on behalf of the corporation have not been granted

authority by local law to institute the proceedings, it has no alternative but to dismiss the petition."

Id. at 106.  The Supreme Court explained that "[i]n absence of federal incorporation, that authority

[to file bankruptcy on the corporation's behalf] finds its source in local law."  Id.  Because the

shareholders did not have authority to file the bankruptcy (Id. at 104), the bankruptcy case was

properly dismissed.  Id. at 107.

The petition in the instant case was filed by Jeannie, purporting to act as the trustee of the

Trust.  As discussed above, Jeannie did not have the requisite authority under state law to file the

petition because the Superior Court had ordered her suspension as trustee the day before the petition

was filed on the Petition Date.  Therefore, the Bankruptcy Case must be dismissed on this ground as

well.

**C.    The Case must be dismissed for bad faith filing under Section 1112(b).**

Section 1112(b) of the Code authorizes the Court to dismiss a Chapter 11 petition or to

convert the case to one under Chapter 7 for "cause," on the petition of a party in interest.  The

Spenard Ventures court explained:

> Although Section 1112(b) sets out a list of circumstances constituting
> cause, that list is not exclusive. See § 102(3).  The legislative history of §
> 1112(b) demonstrates the intent of Congress that the bankruptcy court
> retain broad equitable powers to dismiss petitions. Senate Report 95-989,
> 95th Cong. 2d Sess. 117 (1978); House Report 95-595, 95th Cong. 1st

> Sess. 405-406 (1977). Most courts that have faced the issue have held that bad faith in the filing of a petition constitutes cause for dismissal under § 1112(b). . . . This Court agrees and holds that bad faith in filing a Chapter 11 petition may provide cause to dismiss a petition pursuant to § 1112(b). In addition, the United States District Court for the District of Alaska has held that the burden of proving good faith is on the debtor.

In re Spenard Ventures, Inc., 18 B.R. 164, 166, 6 C.B.C. 156, 159 (Bkrtcy.Alaska 1982); In re O'Loughlin, 40 B.R. 707, 709 (Bankr. D. Mass. 1984); In re Sagewood Manor Assocs. Ltd. Pshp., 223 B.R. 756, 761 (Bankr. D. Nev. 1998).  Here, Jeannie and her counsel knew that the Trust is not a business trust and obviously filed this case to delay and frustrate the Movants and prevent further rulings of the Superior Court.  This case should be dismissed on this ground as well.

**D.    The Automatic Stay Should Be Annulled Nunc Pro Tunc to the Petition Date**

The Superior Court, without notice of the improper filing of the instant case, ruled on certain pending matters on June 15, 2010, and continued to administer the Conservatorship Proceeding until Jeannie filed the Notice of Removal.  It is in the best interests of the Conservatee that those rulings be preserved by annulment of the automatic stay, nunc pro tunc to the Petition Date.

Typically, a decision to lift or annul the automatic stay is within the discretion of the bankruptcy court.  MacDonald v. MacDonald (In re MacDonald), 755 F.2d 715, 716 (9th Cir. 1985) (lifting stay); In re Nat'l Envtl. Waste Corp., 129 F.3d 1052, 1054 (9th Cir. 1997) (annulling stay).  Because there is no clear definition of what constitutes "cause," discretionary relief from the stay must be determined on a case by case basis.  In re MacDonald, 755 F.2d at 717.  Lack of adequate protection is but one example of cause for relief from stay.  In re Ellis, 60 B.R. 432, 435 (B.A.P. 9th Cir. 1985).  "Cause" to lift the stay is typically found where the debtor's failure to make post-petition payments "corresponds with the absence of an equity cushion."  In re Avila, 311 B.R. 81, 83 (Bankr. N.D. Cal. 2004).

In the case of a request to annul the automatic stay, however, additional factors come into play.  In Nat'l Envtl. Waste, the Ninth Circuit adopted a balancing of equities approach for analyzing a request for retroactive stay relief, and identified two factors to be considered by the bankruptcy court: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor.  Id. 129 F.3d at 1055-56.

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

13

1    Here, Jeannie filed an improper chapter 11 petition for an entity that is not eligible as a

2  debtor under Section 109, and for which she no longer exercised any authority.  She has failed to file

3  schedules, failed to appear at the 341 meeting, and has failed to show anything approaching good

4  faith.  This petition was filed after the June 13, 2011 hearing, at which the Superior Court ordered

5  Jeannie's suspension as trustee and made it crystal clear that the Superior Court had already made its

6  decision on the various petitions in the Conservatorship Proceeding by Jeannie and the Movants

7  seeking appointment of a permanent conservator for the Conservatee.

8    The rulings of the Superior Court pertain to the health and well-being of the Conservatee and

9  should be allowed to stand despite this improper chapter 11 petition, and Jeannie should not be

10  rewarded for her wrongful attempt to dodge those rulings by this improper filing.  Wherefore,

11  Movants respectfully requests that this Court dismiss the instant case and annul the automatic stay,

12  nunc pro tunc, to the Petition Date.

### III.

### CONCLUSION

15    Based on the foregoing, the Movants respectfully request that the above-entitled Chapter 11

16  case be dismissed and the automatic stay be annulled nunc pro tunc to the Petition Date.

18  DATED: July 28, 2011            /s/ Laura L. Buchanan
19                                  LAURA L. BUCHANAN
                                    DAVID J. RICHARDSON
20                                  THE CREDITORS' LAW GROUP, APC
                                    Attorneys for Linda Cotterman as temporary
21                                  Conservator of the Person and Estate of Jean Miho
                                    Tanaka, Christine Tanaka, and Wesley Tanaka

24                                  MARY G. CREUTZ
25                                  Attorney for Jean Miho Tanaka

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel: (323) 686-5400    Fax (323) 686-5403

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

## DECLARATION OF LINDA COTTERMAN

I, LINDA COTTERMAN, hereby declare as follows:

1.      I am an adult over the age of 18 and a private professional conservator licensed by the State of California.

2.      The facts set forth in this declaration are true of my own knowledge, and if called herein as a witness, I could and would testify competently thereto under oath.  In particular, I am one of the custodians of the books, records and files related to the custodianship of Jean Miho Tanaka ("Records").  I have personally worked with the Records, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge from the Records, which were made at or about the time of the events recorded, and which are maintained in the ordinary course at or near the time by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.

3.      This declaration is being submitted in support of the *Motion to Dismiss Chapter 11 Case* (the "Motion"), with which this declaration is being filed.  Capitalized terms that are not defined herein are defined in the Motion.

4.      On June 14, 2011 (the "Petition Date"), Jeannie Tanaka filed a petition for relief for the Trust as the debtor in this case under chapter 11 of the Bankruptcy Code in this Court, erroneously naming the Debtor as "The Jean Tanaka Trust, Jeannie Tanaka Trust."

5.      The Conservatee is the mother of Jeannie Tanaka ("Jeannie") as well as Christine Tanaka ("Christine") and Wesley Tanaka ("Wesley"), who are two of the Movants.

6.      A true and correct copy of the docket in this case ("Docket") is attached hereto as Exhibit A.  On information and belief, no one appeared at the 341(a) meeting of creditors on behalf of the purported debtor in this case.

7.      On May 20, 2010, I was appointed by this court to function as temporary conservator of the person and estate of Jean Miho Tanaka ("Conservatee") in a proceeding pending in the Los Angeles Superior Court titled In re: Conservatorship of Jean Miho Tanaka, Los Angeles Superior Court case number BP 117 240 (the "Conservatorship Proceeding").  My appointment as temporary conservator became effective as of June 8, 2010 and my Letters of Temporary Conservatorship were

4

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

1  issued on June 14, 2010 and have remained in full force and effect since that date.

2      8.      Conservatee residence is located at 949 Malcolm Drive, Los Angeles, California (the

3  "Malcolm Property" or "Property").  On or about July 14, 2010, Conservatee temporarily moved to

4  Christine's residence at 1912 Benecia Avenue, Los Angeles, CA 90025 (the "Benecia Property")

5  because of the concerns of Christine and Wesley for the Conservatee described below.

6      9.      The most significant asset that is ostensibly in the Trust is the Property.  I believe that

7  the Property is encumbered by a reverse mortgage of approximately $900,000 that was placed on the

8  Property prior to the conservatorship of the Conservatee, and a California State Franchise Tax lien of

9  about $1,400,000.  It is unclear whether there is any equity in the home above those claims.

10     10.     In 2009, Christine and Wesley filed an action to create a conservatorship for Jean

11  Tanaka as Conservatee.  That action was filed in the Superior Court of California for the County of

12  Los Angeles ("Superior Court") and is entitled, In Re The Conservatorship of Jean Miho Tanaka

13  LASC C/N BP 117240 ("Conservatorship Proceeding").  Mary Creutz was appointed by Superior

14  Court from the Probate Volunteer Panel to represent the Conservatee.  In that action, a temporary

15  Conservator was appointed, and the Conservator was appointed to replace the first conservator.  The

16  validity and enforceability of the Trust have been questioned in the Conservatorship Proceeding, and

17  the Movants reserve all of their rights with respect to whether or not the Trust was actually created

18  and/or is enforceable.

19     11.     Since the filing of the Conservatorship Proceeding, the Movants have battled with

20  Jeannie over many issues related to the Conservatee's care and her property.  Most recently, I filed

21  the "Temporary Conservator Linda Cotterman's Ex Parte Application For: (I) The Issuance Of An

22  Order To Show Cause As To Why Respondent Jeannie Tanaka Should Not Be Held In Contempt

23  For Violating The Court's May 20, 2010 Order, Or In The Alternative, (II) For An Order Shortening

24  Time For A Hearing On Petitioner's Petition To Determine Title To Real And Personal Property

25  Improperly Taken From Conservatee" (the "Ex Parte Application") in the Conservatorship

26  Proceeding.

27     12.     On May 20, 2010, two orders were issued in the Conservatorship Proceeding

28  concerning Jeannie Tanaka's ("Jeannie") rights to visit the Malcolm Property.  One of those orders

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax  (323) 686-5403

1  appointed the Conservator to assume the role as Conservatee's temporary conservator, and one of

2  them provided that Jeannie was not to live in the Property and was only to visit the house pursuant to

3  monitored visits.  I filed the Ex Parte Application because (among other things): (i)  Jeannie had

4  violated those orders and had changed the locks on the Property without prior notice to the

5  Conservator and had refused to return possession or provide the Conservator with a copy of the keys;

6  (ii) it appears that Jeannie had been removing Conservatee's personal property and had boasted that

7  she intended to rent the Property; and (iii) Jeannie had been observed on site very late in the evening

8  and may have been residing in the Property or renting it.  Jeannie's plans to rent the Property are

9  critical, as the reverse mortgage was premised upon the Conservatee living in the Property, and any

10  rental of the Property will risk a default of that mortgage.

11          13.     As part of my duties as temporary conservator, I regularly check up on the Malcolm

12  Property to collect Conservatee's mail and make sure the property is secured.  On May 15, 2011 at

13  approximately 6:00 pm, I went to the Malcolm Property and discovered that my key did not work.

14  Upon closer examination, I discovered that a new lock was placed on the front door, as well as a new

15  lock and a padlock on the south side gate.  The north gate lock was also inaccessible with my key as

16  well as the lock on the garage door.

17          14.     Within a day or so, I learned that Jeannie had broken into the Malcolm Residence and

18  arranged to have the locks changed on the Malcolm Property.  At no time did I give Jeannie

19  permission to enter the Malcolm Property or change the locks.  Except as described below, I have

20  been denied access to the Malcolm Property and no longer have control of Conservatee's personal

21  property which was left at the Malcolm Property.

22          15.     On several occasions since May 15, 2011, I have driven by the Malcolm Property in

23  the evening and noticed that Jeannie's automobile was parked outside.

24          16.     On Saturday, May 30, 2011, I drove by the Malcolm Property and observed three cars

25  parked in the driveway and the front door open.  I eventually went into the house and discovered the

26  Jeannie was inside with her attorney Robert Canny and what appeared to be four other individuals.

27  After I entered the Malcolm Property, I asked Jeannie stop her behavior and leave the residence.  In

28  response, I was threatened by both parties; in particular I was told that they were calling the police

**The Creditors' Law Group, a Professional Corporation**
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

1  because I was trespassing and that they now had evidence that I had "stolen" Conservatee's property.

2      17.    Later that morning, the Los Angeles police arrived and remained on the premises for

3  approximately two hours.  I showed the police my court orders and asked them to remove Jeannie,

4  Mr. Canny and the other individuals but the officer indicated that they could not help me because

5  Jeannie and Mr. Canny claim that the Malcolm Property is an asset of debtor the Trust.

6      18.    Throughout this conservatorship, I have been exercising all incidents of ownership of

7  the Malcolm Property.  This has included holding possession (Jeannie never having a key to the

8  property), as well as paying real property taxes, utilities, insurance and the gardener.  In addition, at

9  the court's direction, I also paid a $3,500 retainer to attorney Alvin Brown for him to attempt to

10  compromise a tax lien against the Malcolm Property.  Jeannie's decision to suddenly and unilaterally

11  assert ownership of the Malcolm Property is contrary to the understanding of every party hereto,

12  including Jeannie.

13      19.    On June 13, 2011, at the hearing on the Ex Parte Application, the Superior Court ordered

14  that Jeannie be suspended as trustee of the Trust.  A true and correct copy of the relevant pages of the

15  transcript from that hearing is attached hereto as <u>Exhibit C</u>.

16      20.    On June 15, 2011, the Superior Court entered its Tentative Statement of Decision

17  pursuant to CCP § 632 and C.R.C. § 3.1590 ("Conservatorship Ruling") on the various petitions in

18  the Conservatorship Proceeding by Jeannie and the Movants seeking appointment of a permanent

19  conservator for the Conservatee; a true and correct copy of the Conservatorship Ruling is attached

20  hereto as <u>Exhibit D</u>.

21      21.    On June 23, 2011, the Superior Court formally entered its Order regarding the Ex

22  Parte Application; a true and correct copy of that Order is attached hereto as Exhibit E.

23      22.    On July 22, 2011, Jeannie filed a notice of removal [Docket No. 12] ("Notice of

24  Removal"), removing the Conservatorship Proceeding to this Court.  A true and correct copy of the

25  Notice of Removal is attached hereto as <u>Exhibit F</u>.

26      23.    On February 22, 2011, Jeannie filed that certain Correcting Deed ("Deed"), a true and

27  correct copy of which is attached as <u>Exhibit G</u>.

28

1    24.    I believe that the Trust has not been taxed as a partnership or a corporation under

2  California law, and I do not believe the Trust was authorized to, or actually was, doing business or

3  that it had complied with California's fictitious name statutes.

4        I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct to the best of my knowledge, information and belief.

6        Executed this 26 day of July 2011, at Los Angeles, California.

7

8

9                                         Linda Cotterman

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

8

**DECLARATION OF CHRISTINE TANAKA**

I, CHRISTINE TANAKA, hereby declare as follows:

1.      I am an adult over the age of 18.

2.      The facts set forth in this declaration are true of my own knowledge, and if called herein as a witness, I could and would testify competently thereto under oath.

3.      This declaration is being submitted in support of the *Motion to Dismiss Chapter 11 Case* (the "Motion"), with which this declaration is being filed.  Capitalized terms that are not defined herein are defined in the Motion.

4.      The Trust was executed by the Conservatee after her husband (my father) passed away and while Jeannie lived with her, and Wesley and I believe that the execution of the Trust document was manipulated by Jeannie as a result of undue influence over the Conservatee.

5.      Jeannie had lived with our mother and father, Togo, prior to his death and provided care for them, and Jeannie had stayed in the Property with our mother after his death.  Wesley and I became concerned about Jeannie's treatment of our mother when (among other things) we sought to see her repeatedly but were repeatedly given excuses for why our mother could not or would not see them, and as she was showing signs of dementia, which was later diagnosed, as explained further in the Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 28th day of July 2011, at Los Angeles, California.

_Christine Tanaka_
Christine Tanaka

The Creditors' Law Group, a Professional Corporation
2301 Hyperion Avenue, Ste. A, Los Angeles, CA 90027
Tel. (323) 686-5400    Fax (323) 686-5403

9

| In re:                                          | CHAPTER: 11 |
|-------------------------------------------------|-------------|
| The Jean Tanaka Trust, Jeannie Tanaka Trust     |             |
|                                      Debtor(s). | CASE NUMBER: 2:11-bk-35577-BR |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

> The Creditors' Law Group, APC
> 2301 Hyperion Avenue, Ste. A
> Los Angeles, CA  90027-4711

A true and correct copy of the foregoing document described as NOTICE OF MOTION AND MOTION TO DISMISS CHAPTER 11 CASE; DECLARATION OF _ IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 28, 2011 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On    July 28, 2011          , I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

> United States Trustee (LA) (Fedex)
> 725 S. Figueora St., 26th Floor
> Los Angeles, CA  90017-5524

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  July 28, 2011  , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

> Honorable Barry Russell (Personal delivery)
> United States Bankruptcy Court
> 255 East Temple Street, Suite 1660
> Los Angeles, CA  90012

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 28, 2011 | Laura L. Buchanan | /s/ Laura L. Buchanan |
|---------------|-------------------|------------------------|
| Date          | Type Name         | Signature              |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                          **F 9013-3.1.PROOF.SERVICE**

| In re:<br>The Jean Tanaka Trust, Jeannie Tanaka Trust | | CHAPTER: 11 |
|---|---|---|
| | Debtor(s). | CASE NUMBER: 2:11-bk-35577-BR |

**ADDITIONAL SERVICE INFORMATION** (if needed):

**II.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** –

Alvin Mar                              alvin.mar@usdoj.gov
Ron Maroko                         ron.maroko@usdoj.gov
United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**

Counsel to Jeannie Tanaka and Debtor
Robert E Canny – Personal delivery
5042 Wilshire Blvd.
Los Angeles, CA 90036

Counsel to Conservatee, Jean Tanaka
Mary G. Creutz – Email
reginecc@aol.com

Counsel to Conservator, Linda Cotterman
Scott P. Schomer – Email
scott@schomerlaw.com

Counsel to Christine and Wesley Tanaka
Margaret G. Lodise – Email
mlodise@trustlitigation.la

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                           **F 9013-3.1.PROOF.SERVICE**