FILED

SEP 13 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

1  **ROBERT E. CANNY, ESQ.  [SBN 060744]**
2  **LAW OFFICES OF ROBERT E. CANNY**
   **5042 Wilshire Boulevard, Suite 885**
3  **Los Angeles, California 90036**
   **Tel. (213) 401-3996 - Fax (213) 401-3998**
4

5  **Attorney for** ~~████████████~~ *DEBTOR*

6

7

8              **THE UNITED STATES BANKRUPTCY COURT FOR**

9              **THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  | | |
    | --- | --- |
    | **In re** | ) **CHAPTER  11** |
    | **THE JEAN TANAKA TRUST, JEANNIE** | ) **CASE NO. 2:11-bk-35577-BR** |
    | **TANAKA TRUSTEE (A Business Trust)** | ) |
    | | ) **NOTICE OF  FILINGS BY DEBTOR** |
    | **Debtor.** | ) |
    | | ) |
    | | ) |

15

16   TO THE HONORABLE  UNITED STATES BANKRUPTCY COURT FOR

17  THE CENTRAL DISTRICT OF CALIFORNIA AND TO THE HONORABLE SUPERIOR

18  COURT FOR THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA THE HON.

19  REVA GOETZ, JUDGE PRESIDING IN DEPARTMENT 9, AND TO THE CONSERVATEE

20  THEREIN JEAN TANAKA, AND TO THE OTHER LITIGANTS AND THEIR DISPUTED

21  CLAIMS AND TO THEIR ATTORNEYS OF RECORD.  PLEASE TAKE NOTICE THAT

22  THE JEAN TANAKA TRUST, JEANNIE TANAKA TRUSTEE HAS FILED THE

24  FOLLOWING DOCUMENTS:

25          1.      ITS COMPLETED SCHEDULES

26          2.      ITS CASH RECEIPTS AND DISBURSEMENTS FOR AUGUST, 2011.

27          3.      ITS COMPREHENSIVE PLAN OF REORGANIZATION

28

1  4.  THE JEAN TANAKA TRUST AND RELATED CORRESPONDENCE

2  5.  RELEVANT DEEDS IN THE CHAIN OF TITLE TO THE MALCOLM

3     PROPERTY INCLUDING THE CURRENT REVERSE MORTGAGE

4

5  6.  ITS *PRO FORMA* OPPOSITION TO THE TRUSTEE'S MOTION TO

6     DISMISS.

7 RESPECTFULLY SUBMITTED.

8 DATED: September 12, 2011     LAW OFFICES OF ROBERT E. CANNY

9

10              By: _____

11              ROBERT E. CANNY, Attorney for Debtor

12

13         **PROOF OF SERVICE**

14

15 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:**

16   I reside in the County of Los Angeles, State of California. I am over the age of 18 and

17 not a party to the within action. The address and telephone number at which I can be reached

18 are: 5042 Wilshire Boulevard, Suite 885; Los Angeles, California 90036; Tel. (213) 401-3996.

19   On July 22, 2011, I served the foregoing document(s) described as **NOTICE OF**

20 **FILINGS BY DEBTOR** on the interested parties in this action by personally mailing a true

  copy thereof to the interested parties.

21

22        **MASTER MAILING LIST**

23   Executed on September 12, 2011 at Los Angeles County, California. I declare under penalty

24 of perjury under the laws of the State of California that the above is true and correct.

25

26

27        ROBERT E. CANNY

28       **MASTER MAILING LIST**

1

2

3

**Jeannie Tanaka, Trustee**
**P.O. Box 241256**
**Los Angeles, CA 90024**

4

5

6

**Robert E. Canny, Esq.**
**5042 Wilshire Blvd**
**Suite 885**
**Los Angeles CA 90036**

7

8

9

**Martin S, Reed, Esq.**
**1901 Avenue of the Stars,**
**11th Floor**
**Los Angeles, CA 90067**

10

11

12

**Tracy Hom, Esq.**
**1901 Avenue of the Stars,**
**11th Floor**
**Los Angeles, CA 90067**

13

14

**United States Trustee**
**725 S Figueroa St Ste 2600**
**Los Angeles, CA 90017**

15

16

**Internal Revenue Service**
**300 N Los Angeles, Street**
**Los Angeles, CA 90012**

17

18

19

**Christine and Wesley Tanaka**
**1912 Benetia  Ave**
**Los Angeles, CA 90025**

20

21

22

**Mary G. Creutz, Esq.**
**11661 San Vncente Blvd.**
**Suite 206**
**Los Angeles, CA 90049**

23

24

**Linda Cotterman**
**2126 Patricia Avenue**
**Los Angeles, CA 90025**

25

26

**Founders Homecare, Inc**
**21822 Sherman Way, Suite 201**
**Canoga Park, CA 91303**

27

28

**Marshall Rosenberg**
**21822 Sherman Way, Ste 201**

3

1

Canoga Park, CA 91303

2

Carol White

3

578 Washington Blvd., #443
Marina del Rey, CA 90292

4

Kathryn J. Black , Esq.

5

2550 Honolulu Ave Ste 104

6

Montrose, CA 91020

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL TO USBC



**ROBERTSON + LUM LLP**

Gayley Center Westwood
1125 Gayley Avenue
Los Angeles, California 90024
telephone: (310)824-0467
facsimile: (310)208-3854
www.robertsonlum.com

Hugh Duff Robertson
hdr@robertsonlum.com

July 1, 2009

*PERSONAL AND CONFIDENTIAL*

Ms. Jean Tanaka
949 Malcolm Ave.
Los Angeles, CA 90024

    Re:    <u>**Estate Planning Review**</u>

Dear Jean:

    We are enclosing herewith the originals of The Trust, Exercise of General Power of Appointment, and your will.

    Your will is a pour-over will. That is to say, any asset which may be outside the trust which would require a probate, is given to your Trust. Jeannie is the executor of your will.

    As you know, the Trust provides that all of your property in the Trust is to be distributed to your daughter, Jeannie Tanaka. If Jeannie Tanaka does not survive you, then the trust assets will be distributed equally between Wesley and Christine Tanaka, or the survivor of them. The Trust is revocable. If at any time you should want to change any provision contained in the Trust, we would be happy to assist you.

    The Exercise of General Power of Appointment directs distribution of the principal and any undistributed income in the Survivor's Trust set forth in the Togo William Tanaka and Jean Miho Tanaka 1986 Revocable Living Trust to your new Trust.

    Although executing the trust document provides you with an orderly disposition of your estate, you will not avoid probate unless and until the trust obtains legal title to your property. This procedure is called "funding" the trust and requires transferring title to the trust.

    Documents of title must be executed to fund the trust. Title to assets you acquire in the future should be put in the trust's name. If you take title to property in your own name at any time without disclosing the trust, you will undo the trust to that extent.

Ms. Jean Tanaka
July 1, 2009
Page 2

As indicated above, to subject an asset to the terms of the trust, you must transfer title to the trustee of the trust. The vesting (manner in which title is held) should be as follows:

"Jeannie Tanaka, Trustee of the Jean Tanaka Trust U/T/D 6/5/09"

We have recorded the Affidavit of Death of Joint Tenant to the Malcolm property. We have also recorded a deed to the Malcolm property transferring the property to your trust.

A.    In the future to transfer real property to the trust, you must execute a deed showing the property transferred to the trustee of the trust. You must put "Jeannie Tanaka, Trustee of the Jean Tanaka Trust U/T/D 6/5/09" on the deed. After the deed is executed, it should be messengered to the county recorder's office to be recorded. When you record the deed, you must also file a Change of Ownership Statement to prevent reassessment by mistake. No documentary transfer tax will be due, because the property has not been sold. We can, of course, help you with the transfer of any real property.

B.    You should transfer any interests in any assets you have to the Trust.

C.    If securities are held through a brokerage firm, title on the brokerage account must be changed, rather than on each share certificate. If title to securities is held in your name, however, the stock should actually be transferred to the Trust. Your broker can help you make this change. Your stockbroker may request a copy of the signed trust instrument for examination by his or her firm's legal department. We generally do not provide a copy of the entire agreement. A copy of the first page, signature page and a copy of the pages setting forth the trustee's powers will demonstrate that the trust is properly executed and that the trustee has the necessary powers to borrow money, buy and sell stocks, bonds, and options; trade on margin; and conduct other trust business. Often, brokerage firms have their own Certification of Trust form for you to complete as a requirement of transferring title to your trust. A letter to mutual funds referencing your account number is usually sufficient to transfer that type of investment, but you must confirm this with the mutual fund.

D.    The beneficiary of any pension plans (IRAs, Keoghs, SAG, AFTRA, pension plans, etc.), annuities, and life insurance policies should be reviewed to be sure they accurately reflect the desired disposition of the benefits of the plan or policies, as they relate to the intended disposition of your estate. You should consult your tax adviser for help in determining the designation of beneficiary.

E.    Your bank accounts should be designated to show "Jeannie Tanaka, Trustee of the Jean Tanaka Trust U/T/D 6/5/09". You can contact the bank to help with the transfer.

Ms. Jean Tanaka
July 1, 2009
Page 3

F.      You have transferred tangible personal property to the trust by the execution of Schedule A attached to the trust instrument.  Any specific property (e.g., copyrights, royalty contracts, airplanes, yachts, horses, etc.) should also be transferred to the trust.

G.      Any other assets you own should be changed to show the ownership held by the trust; for example, shares held in a partnership, business, limited liability company, etc.

The bottom line is that all assets presently owned and/or acquired or to be acquired in the future should be held in the name of the Trust.  Finally, we have enclosed a checklist of changes which require review of your estate plan.  Please consult this checklist from time to time to ensure your estate plan continues to reflect your wishes.

Naturally, if you would like any assistance or should have any questions, please do not hesitate to call.

Thank you for choosing our firm.

Sincerely,

ROBERTSON + LUM LLP

By: Hugh Duff Robertson

HDR/tc
Enclosures

**CHECKLIST: CHANGES REQUIRING REVIEW OF SETTLOR AND ESTATE PLAN**

If any of the following events occur, you should review the potential effect on your will and estate plan to determine whether they should be amended or revised. (This is not an all-inclusive list.)

1. Changes in family relations
   a. Marital dissolution or separation
   b. Death of a spouse
   c. Marriage of a single person
   d. Changes regarding child or grandchild (or other beneficiary)
      a. Birth of a child
      b. Marriage of a child
      c. Marriage dissolution of a child
      d. Adoption of a child
      e. Illness of a child
      f. Death of a child
      g. Economic change: good or bad fortune
      h. Attitude change toward testator
      i. Financial irresponsibility

2. Changes in economic and personal condition of settlor
   a. Asset values-increase or decrease
   b. Change in insurability-life insurance
   c. Change in employment
   d. Change in business interests-new partnerships or corporations
   e. Property acquired in a different state
   f. Change in health testator or spouse
   g. Retirement from business or profession
   h. Acquisition of life insurance policy

3. External changes
   a. Changes in laws: state and federal income, estate and gift, property, trusts, probate
   b. Change of residence to different state
   c. Death of trustee (in the case of a will death of an executor or guardian)

## EXERCISE OF

## GENERAL POWER OF APPOINTMENT

WHEREAS, pursuant to the powers reserved to her under Paragraph 4.2.4 of the Complete Amendment to the Togo William Tanaka and Jean Miho Tanaka 1986 Revocable Living Trust ("The T. and J. Tanaka Living Trust"), Jean Tanaka hereby expressly exercises said power of appointment by requiring distribution of the principal and any undistributed income of the Survivor's Trust to Jeannie Tanaka.

DATED: _June  5_ , 2009

_Jean M. Tanaka_

Jean Tanaka, Settlor

# THE JEAN TANAKA TRUST

### DECLARATION OF TRUST

Jean Tanaka, as Settlor, will deliver to the Trustee without consideration the property described in Schedule "A".

### ARTICLE 1
### DECLARATIONS

This Trust may be referred to as the "THE JEAN TANAKA TRUST".

### ARTICLE 2
### FAMILY OF SETTLOR

The Settlor has three (3) adult children: Togo Wesley Tanaka, Christine Ann Tanaka and Jeannie Eleanor Tanaka. Settlor's spouse, Togo Wesley Tanaka died May 21, 2009.

### ARTICLE 3
### TRUST DURING SETTLOR'S LIFE

3.1 The Trustee shall hold, administer, and distribute all property allocated to the "Trust During Settlor's Life" as follows:

| | |
|---|---|
| Income beneficiary: | Settlor |
| Principal beneficiary: | Settlor |

3.2 The Trustee shall pay to or for the benefit of the income beneficiary as much of the net income of the beneficiary's trust estate as is necessary for the income beneficiary's health, education, support, comfort, welfare, or happiness to maintain at a minimum the income beneficiary's accustomed manner of living. The Trustee shall add to principal any net income not so distributed.

3.3 If the Trustee considers the income insufficient, the Trustee shall pay to or for the principal beneficiary's benefit as much of the principal from the trust estate as necessary for the principal beneficiary's health, education, support, comfort, welfare, or happiness to maintain at a minimum the principal beneficiary's accustomed manner of living.

3.4 If a court declares the Settlor incompetent or if a trustee,

-1-

after consultation with two medical professionals, considers the Settlor unable to manage the Settlor's own affairs by reason of physical or mental disability, then the Trustee or successor trustee may pay to or for the Settlor as much of the net income and principal of the trust estate as is necessary for the Settlor's health, education, or support to maintain the Settlor's accustomed manner of living.  The Trustee shall add to principal any income not so distributed.

3.5   In making distributions, the Trustee, in its reasonable discretion, may consider any other income or resources of the beneficiary known to the Trustee and reasonably available.

3.6   The Settlor may at any time direct the Trustee in writing to pay single sums or periodic payments from the trust estate to any person or organization.   Additionally, the Settlor's conservator on appropriate court order may exercise this power for payments qualifying for the federal gift tax annual donee exclusion.

3.7   The Settlor may at any time revoke this instrument in whole or in part by a written instrument delivered to the Trustee that the Trustee may require to be acknowledged.  On revocation, the Trustee shall promptly deliver to the Settlor or designee all or the designated portion of the trust estate.   The Trustee shall also provide an accounting of the Trustee's acts since the preceding accounting.  If the Settlor revokes this instrument entirely or with respect to a major portion of the trust estate subject to this instrument, then the Trustee may retain sufficient assets reasonable to secure payment of liabilities lawfully incurred by the Trustee in the administration of the trust, unless the Settlor indemnifies the Trustee against losses or expenses.

3.8   The Settlor may at any time amend any of the terms of this trust by a written document delivered to the Trustee.   No amendment shall substantially increase the Trustee's duties or liabilities or change the Trustee's compensation without the Trustee's consent.  The Trustee need not abide by the terms of the amendment until it is accepted.   If the Settlor removes the Trustee, the Settlor shall pay to the Trustee any sums due and shall indemnify the Trustee against liabilities lawfully incurred by the Trustee in the administration of the trust.

3.9   The Settlor's powers to revoke or amend this trust are personal to the Settlor, and no guardian, conservator, or other person shall exercise them.

## ARTICLE 4
### TRUST ALLOCATION AT SETTLOR'S DEATH

4.1   At the Settlor's death, the Trustee shall make the following gifts:

> 4.1.1   The Trustee shall distribute all of the Settlor's jewelry, clothing, books, scripts, personal automobiles, furniture and furnishings, and other tangible articles of a personal nature, or the Settlor's interest in any such property, not otherwise specifically disposed of herein, or in any other manner, together with any insurance on the property, to her daughter Jeannie Tanaka. If Jeannie Tanaka is not then living, then these gifts shall be divided equally between Togo Wesley Tanaka and Christine Ann Tanaka.

4.2   The Trustee may, in the Trustee's reasonable discretion, pay from the trust estate the Settlor's debts, last illness and funeral costs, and expenses of administration for this trust and the Settlor's probate estate.

4.3   The Settlor directs the Trustee to charge and collect .all federal death taxes for assets passing under this trust and assets passing outside the Settlor's trust or will from those persons sharing in the federal taxable estate in accordance with the California Probate Code provisions for death tax apportionment and allocation. Further, the Settlor directs the Trustee to charge and collect all state death taxes in the same manner as the federal death taxes and not as probate administration expenses. The Settlor recognizes and confirms that such statutes provide that if a beneficiary's gift contributes to the taxable estate, the beneficiary must pay a proportionate share of the tax calculated at the average tax rate. These tax directions shall not apply to any gifts passing under the Settlor's will or under this trust designated as: "free of all death taxes," and the Trustee shall pay all death taxes on such gifts from the remainder of the trust estate without apportionment among the beneficiaries. To the extent other assets are available, the Trustee shall not use any qualified retirement plan distribution excluded from federal estate tax under the Internal Revenue Code to pay taxes, debts, or other charges enforceable against the Settlor's estate.

4.4   At the Settlor's death, the remaining trust estate shall be distributed outright to Jeannie Tanaka. If she is not then

-3-

living, then these gifts shall be distributed equally between
Togo Wendy Tanaka and Christine Ann Tanaka, or the survivor of
them.

## ARTICLE 5
## OFFICE OF TRUSTEE

5.1    For all trusts under this instrument, the Trustee and
successor trustees shall be those persons named below. Each
successor trustee shall serve in the order designated if the
prior trustee fails to qualify or ceases to act.

      First Trustee: Jeannie Tanaka

5.2    If all designated trustees fail to qualify or cease to act, a
court of competent jurisdiction shall appoint a trustee or co-
trustees, individual or corporate, after consideration of the
preference of the current income beneficiaries of the trust.

5.3    Resignation, Disability or Absence of Trustee.

    5.3.1    Any trustee may resign at any time from any trust
under this instrument. The resigning trustee shall
give written notice of the resignation by personal
delivery or registered mail to all current income
beneficiaries. The resignation shall be effective
on the qualification of a designated successor
trustee. The designated successor trustee shall
act as Trustee on acceptance of the appointment.

    5.3.2    If any individual trustee is unable to participate
in trust activities because of illness, disability,
or any other reason, the designated successor
trustee may act as cotrustee during any such
incapacity. In determining the disability of the
individual trustee, the successor trustee may rely
on statements from two licensed physicians who have
examined the Trustee. In the absence of such a
statement, the successor trustee shall petition the
court having jurisdiction over this trust for
authority to proceed as successor trustee. The
successor trustee shall incur no liability to any
beneficiary of the trust or to the replaced trustee
as a result of any action taken under this
provision.

    5.3.3    The Trustee shall have the power to delegate to the
successor trustee all or any of its powers, and the

Trustee shall exercise this power of delegation by written notice to the successor trustee specifying the powers delegated. This delegation shall terminate on delivery of written notice by the Trustee to the successor trustee of termination of delegation. The successor trustee or trustee shall incur no liability to any beneficiary of the trust estate as a result of any actions taken or not taken within the scope of delegation during the period of delegation.

5.4 The Trustee may pay itself reasonable compensation from the trust estate during each calendar year for all ordinary services and reasonable additional compensation for any extraordinary services, all without court order. If the individual trustee serves for only part of a calendar year, the individual trustee shall prorate the annual compensation.

5.5 The Settlor recognizes that the successor trustee may have current or potential conflicts of interest in the management and investment of property held by the trust and nevertheless wishes the successor trustees to serve as trustee. The successor trustees shall not be liable to any beneficiary, cotrustee or successor trustee for any amounts performed in relation to management and investment in their fiduciary capacity, except for fraudulent or grossly negligent conduct. The successor trustee shall be entitled to compensation both as trustee and as an officer, director, partner or employee of a business or entity that may be in conflict with the trust or an asset held by the trust.

5.6 The Trustee may employ custodians, attorneys, accountants, investment advisers, corporate fiduciaries, or any other agents or advisers (herein sometimes collectively referred to as "advisers") to assist the trustee in the administration of this trust and may rely on the advice given by these agents. The Trustee shall pay reasonable compensation for all services performed by these agents from the trust estate out of either income or principal as the trustee in the trustee's reasonable discretion determines. To the extent permitted by law, these payments shall not decrease the compensation to which the Trustee is entitled even if such advisers are employed by an entity owned by the Trustee or in which the Trustee has interest or employs the Trustee.

5.7 No trustee shall be liable to any person interested in this trust for any act or default unless it results from the Trustee's bad faith, willful misconduct, or gross negligence.

5.8  Any successor trustee may accept as correct any accounting of trust assets made by any predecessor Trustee. However, a successor trustee may institute any action or proceeding for the settlement of the accounts, acts, or omissions of any predecessor trustee.

5.9  No trustee, including nonresidents, shall be required to post bond or security.

5.10 The Trustee shall have the power to loan or advance the Trustee's own funds to the trust for any trust purpose, with interest at current rates, to receive security for such loans in the form of a mortgage, pledge, deed of trust, or other encumbrance of any assets of the trust, to purchase or exchange assets of the trust at their fair market value as determined by an independent appraiser, to sell property to the trust at a price not in excess of its fair rental value as determined by an independent appraiser, and to lease assets to or from the trust for fair rental value as determined by an independent appraiser.

5.11 The Trustee and the executor of the Settlor's estate may freely contract financial transactions between themselves, such as the purchase and sale of assets and the making of loans, secured and unsecured, notwithstanding each office being held by the same person and apparent conflicts of interest.

5.12 Any person acting as a trustee may hold office in any entity in which a trust under this instrument holds securities and may receive compensation from any such entity for services performed as a director, officer, or employee of such entity. Such trustee may also purchase, sell, or otherwise deal with securities of any such entity for the individual account of such trustee or the trust and may exercise the voting rights of any such entity held by such trust, including voting those shares in favor of the Trustee or any other person.

5.13 No trustee shall without actual notice of any death, birth or other event upon which the right to payments under this document depends, be liable for disbursements made in good faith. No successor trustee shall be liable for the acts or omissions of his predecessor. Unless requested in writing by a beneficiary or his or her duly appointed representative within ninety (90) days of his or her appointment, no successor trustee shall be required to investigate the actions of his or her predecessor and may accept the accounting records of his or her predecessor trustee without liability to any person. If requested to investigate any action of his

-6-

predecessor, all Trustee's fees, attorneys' fees, accounting fees and other fees and costs so incurred shall be paid by and charged against the trust estate.

5.14 No trustee named herein shall be disqualified by reason of owning an interest in real or personal property, or in a corporation or other business venture, or by reason of being an officer, director or employee of any corporation or other business venture, an interest in which is also a part of the trust estate.

## ARTICLE 6
### TRUSTEE MANAGEMENT POWERS

For all trusts under this instrument, the Trustee shall have the management powers set forth below in addition to those powers now or hereafter conferred by law.

6.1 The Trustee shall have the power to continue to hold any property, including shares of the Trustee's own stock, or to abandon any property that the Trustee receives or acquires.

6.2 Except when specifically restricted, the Trustee shall have the power to retain, purchase, or otherwise acquire unproductive property.

6.3 The Trustee shall have the power to manage, control, grant options on, sell (for cash or on deferred payments with or without security), convey, exchange, partition, divide, improve and repair trust property.

6.4 The Trustee shall have the power to create restrictions, easements, and servitudes; to litigate, arbitrate and compromise claims and actions; and to effect transactions among trusts established hereunder for fair market value, including sales, exchanges and loans.

6.5 The Trustee shall have the power to lease trust property for terms within or beyond the terms of the trust and for any purpose, including exploration for and removal of gas, oil, and other minerals and to enter into community oil leases, pooling, and unitization agreements.

6.6 The Trustee shall have the power to invest and reinvest the trust estate in every kind of property, real, personal, or mixed, and every kind of investment, (including any investment under the control of or management of the Trustee, without

surcharge to the Trustee), specifically including, but not by way of limitation, corporate obligations of every kind, stocks, preferred or common, shares in investment trusts, limited or general partnerships, investment companies, mutual funds, mortgage participations, life insurance policies on the life of any beneficiary that persons of prudence, discretion, and intelligence acquire for their own account, and any common trust fund administered by the Trustee.

6.7   The Trustee shall have all the rights, powers, and privileges of an owner of the securities held in trust, including, but not by way of limitation, the power to vote, give proxies, and pay assessments; to participate in voting trusts and pooling agreements (whether or not extending beyond the term of the trust); to enter into shareholders' agreements; to consent to foreclosure, reorganizations, consolidations, merger liquidations, sales, and leases, and, incident to any such action, to deposit securities with and transfer title to any protective or other committee on such terms as the Trustee may deem advisable; and to exercise or sell stock subscription or conversion rights.

6.8   The Trustee shall have the power to invest in mortgage participations, in shares of investment trusts and regulated investment companies, including any under the control of any investment counsel employed by the Trustee or by the Trustee itself, in mutual funds, money market funds, and index funds that investors of prudence, discretion, and intelligence acquire for their own account.

6.9   The Trustee shall have the power to hold securities or other property in the Trustee's name as Trustee under this trust, or in the Trustee's own name, or in the name of a nominee, or the Trustee may hold securities unregistered in such condition that ownership will pass by delivery.

6.10  The Trustee shall have the power to carry, at the expense of the trust, insurance of such kinds and in such amounts as the Trustee deems advisable to protect the trust estate against any damage or loss and to protect the Trustee against liability with respect to third parties.

6.11  The Trustee shall have the power to borrow money and to encumber or hypothecate trust property by mortgage, deed of trust, pledge, or by otherwise securing the indebtedness of the trust or the joint indebtedness of the trust and a co-owner of trust property.

6.12  The Trustee shall have the power to loan money to any person,

-8-

including a trust beneficiary or the estate of a trust beneficiary, at prevailing interest rates and with or without security as the Trustee deems advisable.

6.13 The Trustee shall have the power to purchase bonds either at a premium or at a discount. For bonds purchased at a premium, the Trustee shall, in a reasonable manner, periodically repay to principal each premium from interest on the bond or sale or redemption proceeds. For bonds purchased at discounts, the Trustee shall periodically accumulate each discount as interest and, to the extent necessary , pay such discount out of principal or from the sale or redemption proceeds.

6.14 The Trustee shall have the power to acquire and maintain life insurance policies on the life of any person, including a trust beneficiary, and to exercise all rights of ownership granted to such policies.

6.15 The Trustee, in the Trustee's absolute discretion, shall have the election to act only as a limited partner of any general partnership in the trust and shall take any action necessary to effect this election.

6.16 The Trustee shall have the power to purchase at less than par obligations of the United States of America that are redeemable at par in payment of any federal estate tax liability of the Settlor in such amounts as the Trustee deems advisable. The Trustee shall exercise this discretion if the Trustee believes that the Settlor is in substantial danger of death, and the Trustee may borrow funds and give security for such purchase. The Trustee shall resolve any doubt concerning the desirability of making the purchase and its amount in favor of making the purchase and in purchasing a larger, even though somewhat excessive, amount. The Trustee shall not be liable to the Settlor, any heir, or any beneficiary of this trust for losses resulting from purchases made in good faith. The Trustee shall redeem such obligations to the fullest extent possible in payment of the Settlor's federal estate tax liability.

6.17 The Trustee shall have the power to deposit trust funds in commercial, savings or savings and loan accounts, subject to the usual restrictions upon withdrawal in effect at that time. To authorize any person or persons to withdraw or disburse money from such accounts for any trust purpose. The Trustee shall incur no liability to any trust beneficiary for exercising the power hereby conferred, and all persons authorized by the Trustee to withdraw or disburse money from any trust account, all financial institutions from which such money is

-9-

withdrawn or disbursed and all persons and entities receiving disbursement of such money shall incur no liability to any trust beneficiary for exercising the authority delegated by the Trustee or acting upon the instructions of any delegate of such authority.

6.18 The Trustee shall have the power to be a beneficiary of and to acquire and maintain life, health and accident insurance on any person and to exercise all options, benefits, rights and privileges of an owner thereof, including the right to borrow against and to pledge such insurance, to surrender it for its cash value, to name and change beneficiaries and to select and change settlement options, for the exclusive benefit of the trust estate.

6.19 The Trustee shall have the power to invest and reinvest all or any part of the trust estate in any common or preferred stocks, shares of investment trusts and investment companies, bonds, debentures, mortgages, deeds of trust, mortgage participations, notes, real estate, or other property the Trustee in the Trustee's discretion selects; to buy stocks or other securities on margin; and to buy or sell options, puts, and calls.  The Trustee may continue to hold in the form in which received (or the form to which changed by reorganization, split-up stock dividend, or other like occurrence) any securities or other property the Trustee may at any time acquire under this trust.  The Trustee shall also have the power to consider individual investments as part of an overall investment strategy, and shall not be required to diversify the investments.

6.20 The Trustee is expressly authorized, in the Trustee's absolute discretion, to permit any person having an interest in the income of the trust to occupy any real property forming a part of the trust estate on such terms as the Trustee shall deem proper, whether rent free or in consideration of payment of taxes, insurance, maintenance, and ordinary repairs, or otherwise.

6.21 The trust estate may include controlling or significant interests in closely held businesses.  The Trustee may continue to hold and operate, sell, or liquidate, at the risk of the trust estate, each such business as part of the trust estate.

6.22 The Trustee may set up and carry, and may charge to income or principal, reserves for repairs, improvements, upkeep, obsolescence, and depreciation of any real or personal property of the trust estate, as the Trustee, in the Trustee's

-10-

discretion, shall consider proper, and the portion charged to income shall be treated as an expense and deduction when computing net income.

6.23 The Trustee may (1) employ real estate agents and brokers to facilitate the sale or leasing of any property of the trust estate; (2) list property for sale or lease on such terms and conditions as the Trustee may determine; (3) grant an exclusive right to sell or lease; and (4) agree to and pay such compensation and commissions to agents, managers and brokers as the Trustee, in the Trustee's discretion, shall determine.

6.24 The Trustee possesses the following additional fiduciary powers:

6.24.1    To retain and continue to operate the business.

6.24.2    To control, direct, and manage the business. In this connection, the Trustee, in its absolute discretion, shall determine the manner and extent of its active participation in supervision and operations, and may delegate such power to persons as it may select, including any associate, partner, officer, or employee of the business.

6.24.3    To hire and discharge officers and employees, fix their compensation, and define their duties; and similarly, to employ, compensate, and discharge agents, attorneys, consultants, accountants, and other representatives as appropriate, including employment of any beneficiary even it also a Trustee.

6.24.4    To invest other trust estate assets in such business, to pledge other assets of the estate or trust as security for loans made to such business, and to loan funds from the trust to such business.

6.24.5    To borrow from any bank or other lending institution, including the Trustee, on competitive terms.

6.24.6    To organize a corporation under the laws of this or any other state or country and to transfer to it all or any part of the business or other property held in the estate or trust, and to receive in exchange stocks, bonds, and other securities.

-11-

6.24.7    To pay any additional required fees if any business interest that may be included in an estate or trust requires additional effort and expertise on the part of the Trustee.  Such fees may be taken as a director's fee that will be remitted to the Trustee or charged as a management consultation fee by the Trustee.

6.24.8    To take any action required to convert any corporation into a partnership or sole proprietorship.

6.24.9    To treat the business as an entity separate from the estate or trusts.  And, in its accountings to a court and to any beneficiaries, the Trustee shall be required to report only the earnings and condition of the business in accordance with standard corporate accounting practice.

6.24.10    To retain in the business such amount of net earnings for working capital and other purposes of the business as advisable in conformity with sound business practice.

6.24.11    To purchase, practice, and sell merchandise of every kind and description; and to purchase and sell machinery and equipment, furniture and fixtures, and supplies of all kinds.

6.24.12    To sell or liquidate all or any part of any business at such time and price and on such terms and conditions (including a sale to any partner, officer, or employee of the business even if an individual Trustee or executor) or to any trust beneficiary.

6.24.13    To exercise any of the rights an powers conferred in this trust in conjunction with another or others.

6.24.14    To diminish, enlarge, or change the scope or nature of any business.

6.24.15    To effect any existing buy-sell arrangements and to negotiate and agree to buy-sell agreements in the best interests of the business, after consideration of the preferences of those beneficiaries actively working in the business.

-12-

6.25 If any irrevocable trust established hereunder holds stock in one or more S Corporations, the Settlor intends that such trust qualify as a Subchapter S Trust under Code §1361. Notwithstanding any other provision of this document to the contrary, the following provisions shall apply to such irrevocable trust:

6.25.1    All of the income of such irrevocable trust shall be distributed at least quarterly to one individual who is a citizen or resident of the United States. If the individual is a minor, distribution shall be made to the minor's natural guardian as Custodian under the California Uniform Transfers to Minors Act.

6.25.2    There shall be only one income beneficiary of such irrevocable trust.

6.25.3    No distribution of principal of such irrevocable trust may be made to anyone other than such income beneficiary during such beneficiary's lifetime.

6.25.4    The income beneficiary's income interest shall end on the earlier of the beneficiary's death or the irrevocable trust's termination by its terms.

6.25.5    If the irrevocable trust ends during the income beneficiary's lifetime, the Trustee shall distribute all of the irrevocable trust's assets to such beneficiary, outright.

6.25.6    If the irrevocable trust has one beneficiary but contains both S Corporation stock and other assets, the Trustee shall divide the irrevocable trust into two trusts, one such trust funded with the S Corporation stock and the other such trust funded with the other assets. Each trust shall constitute a separate and independent trust. The trust funded with the S Corporation stock shall be administered in accordance with Paragraphs a through e above and the other trust shall be administered in accordance with its terms.

6.25.7    If the irrevocable trust has more than one income beneficiary, the Trustee shall divide the S Corporation stock into as many equal shares as there are income beneficiaries of the irrevocable trust. Each share shall constitute a separate and independent trust and shall be administered for one

such income beneficiary in accordance with Paragraphs 6.25.1 through 6.25.6 above. The other assets of the irrevocable trust, if any, shall be administered in accordance with its terms.

## ARTICLE 7
### TRUSTEE ACCOUNTING AND DISTRIBUTION POWERS

For all trusts under this instrument, the Trustee shall have the following powers and duties for accounting and tax matters.

7.1     If any trust established under this trust may be subject to the federal generation-skipping transfer tax, the Trustee may divide that trust into two separate trusts of equal or unequal value, but on the same terms and with the same beneficiaries, so that the transferor's exemption under the Internal Revenue Code section 2631 may be allocated to one of the trusts to the exclusion of the other or disproportionately between them. Unless otherwise required by the treasury regulations or otherwise, the Trustee shall divide the trust based on the value of the property comprising the trust at the date of division.

7.2     The Trustee shall periodically, but not less that once each year, render an account of its administration of the trust to all of the current income and current principal beneficiaries who are then adults. The beneficiary's written approval of the accounting shall be a complete protection of the Trustee as to all matters and transactions stated or shown by the accounting. Failure to transmit to the Trustee either (a) the written approval of such accounting, or (b) a written objection to the accounting, with reasons specified, within a period of ninety (90) days after a written request by the Trustee for such approval shall constitute a written approval of the guardian, conservator, or representative of such person entitled to the accounting. To the extent permitted by law, the written approval of the adult beneficiaries shall bind minor and contingent remainder interests. Except as provided in this paragraph, any reports or accounts otherwise required by the California Probate Code are hereby waived to the fullest extent of the law.

7.3     The Trustee shall determine all matters with respect to what is principal and income of the trust estate and the apportionment and allocation of receipts and expenses between these accounts by the provisions of the

-14-

California Revised Uniform Principal and Income Act from time to time existing. When this instrument or such Act does not provide, the Trustee, in the Trustee's reasonable discretion, shall determine the characterization.

7.4    The Trustee shall establish reasonable reserves for depreciation, notwithstanding any other provision of this instrument or the California Revised Uniform Principal and Income Act.

7.5    Income accrued or unpaid on trust property when received into the trust shall be treated as any other income. Income accrued or held undistributed by the Trustee at the termination of any trust or any interest in a trust created under this instrument, other than a trust that may be a qualified terminable interest property trust, shall go to the next beneficiaries of that interest or trust in proportion to their interest in it. Income accrued or held in trust on the termination of a qualified terminable interest property shall go to the beneficiary of that trust immediately before the termination or to his or her estate.

7.6    The Trustee shall prorate all taxes and current expenses among successive beneficiaries over the period to which they relate on a daily basis.

7.7    The Trustee shall have the power in the Trustee's reasonable discretion to take any action and to make any election to minimize the tax liabilities of any trust and its beneficiaries, to allocate the benefits among the various beneficiaries, and to make adjustments in the rights of any beneficiaries, or between the income and principal accounts, to compensate for the consequences of any tax election or any investment or administrative decision that the Trustee believes has had the effect of directly or indirectly preferring one beneficiary or group of beneficiaries over others.

7.8    If this instrument creates more than one trust, the Trustee shall not be required to physically segregate or divide assets among the various trusts, except on the termination of any of the trusts. However, the Trustee shall keep separate accounts for the separate undivided interests, and the trust may hold undivided interests in the same assets.

7.9    The Trustee shall have the power, in the Trustee's

reasonable discretion, to pay the last illness expenses, funeral expenses, and other obligations incurred for the beneficiary's support from the income or principal of the beneficiary's trust; provided, however, except as expressly provided herein to the contrary, before making payments on beneficiary's behalf, the Trustee shall take into account other resources available to the beneficiary including but not limited to all entitlement benefits from any government agency (e.g. Veteran's benefits, social security) and any other special purpose benefits; and shall not pay or reimburse any amounts to any government.

7.10    In making nonprorata distributions to the beneficiaries, the Trustee shall consider and attempt to equalize, insofar as practicable, the aggregate income tax basis of assets distributed to the various beneficiaries. Any such determination by the Trustee shall bind all parties in interest.

7.11    If, on expiration of the later of either six (6) months after the death of any person holding a power of appointment created by this instrument or the expiration of the statutory period within which a will contest must be filed, the Trustee has not received any document purporting to exercise the power, the Trustee may distribute any property according to the terms of this instrument as if the power had not been exercised. If a document purporting to exercise the power is subsequently located, the Trustee shall not be liable to the appointees under that exercise, and the rights of the appointees and the persons receiving property from the Trustee shall follow applicable law.

7.12    When the Trustee must divide any trust property into parts or shares for the purpose of distribution or otherwise, the Trustee may, in the Trustee's reasonable discretion, make the division and distribution in identical interests, in kind, or partly in kind and partly in money, prorata or nonprorata. The Trustee may make such sales of the trust property as the Trustee deems necessary to accommodate such distributions.

7.13    If the trust directs distribution of the trust estate or division into separate trusts, then the Trustee may, in the Trustee's reasonable discretion, defer that distribution or division for a period reasonably necessary to wind up properly the affairs of the trust. When the Trustee so defers, the Trustee shall make the

-16-

distribution or division as if it had taken place at the time prescribed in the absence of this paragraph, and all beneficiary rights in those trust assets shall accrue and vest as of the prescribed time.

7.14    The Trustee may determine, in its reasonable discretion, if the principal of the trust is uneconomical to administer.    The Trustee may then, in its reasonable discretion, (1) distribute the trust assets to the beneficiaries in proportion to their interests in income; (2) purchase and deliver to the income beneficiaries a restrictive savings account, certificate of deposit, annuity, or endowment; (3) distribute the trust assets to a custodian for the beneficiaries under the California Uniform Transfers to Minors Act; or (4) distribute the trust assets as provided by law.    On such distribution and delivery, the trust shall terminate.    The Trustee shall not be liable or responsible to any person for its action or for its failure or refusal at any time to terminate the trust as authorized in this paragraph.

7.15    Except when this instrument provides otherwise, the Trustee shall delay outright distribution of any minor beneficiary's interest in a trust by continuing in a separate trust such minor's share, subject to any Trustee discretion to terminate a small trust or court-ordered termination.    The Trustee shall add all income to principal and pay to or for the benefit of the minor beneficiary as much of the trust estate as is necessary for the minor beneficiary's health, education, maintenance or support after taking into account the minor beneficiary's other income and resources known to the Trustee and reasonably available for that purpose. When the minor beneficiary attains majority, the Trustee shall distribute the trust estate to the beneficiary outright.    If the minor beneficiary dies before distribution, the Trustee shall distribute the trust estate to the beneficiary's estate.

## ARTICLE 8
## TRUST ADMINISTRATION PROVISIONS

The following additional trust provisions shall apply under this instrument.

8.1    No beneficiary shall anticipate, assign, encumber, or subject to any creditor's claim or to legal process any interest in principal or income before its actual receipt

-17-

by any beneficiary. The beneficial and legal interests in this trust, its principal, and its income shall be free from interference or control of any beneficiary's creditor and shall not be subject to claims of any such creditor or liable to attachment, execution, bankruptcy, or other process of law.

8.2    All trusts created by this instrument or by the exercise of any power of appointment shall terminate twenty-one (21) years after the death of the last descendant of the Settlor living at the Settlor's death. The Trustee shall distribute the principal and undistributed income of a terminated trust to the then-living income beneficiaries of that trust in the same proportion that the beneficiaries are entitled to receive income when the trust terminates. At the time of such termination, if the trust does not fix the rights to income, the Trustee shall distribute the trust by right of representation to the persons who, in the Trustee's reasonable discretion, are entitled to receive trust payments.

8.3    The Trustee may disclaim, release or restrict the scope of any power held in connection with any trust, including any administrative power, whether such power is expressly granted or implied by law, by a written instrument specifying the power to be disclaimed, released, or restricted and the nature of any such restriction. The special trustee shall exercise all powers disclaimed or released.

8.4    The Trustee shall exercise all of the powers in the Trustee's fiduciary capacity and only in such capacity. Further, the Trustee shall have no power to enlarge or shift any of the beneficial interests under any trust except as an incidental consequence of the discharge of the Trustee's fiduciary duties and shall not make any distribution that discharges any beneficiary's legal obligations of support.

8.5    The Trustee shall have the power to compromise, submit to arbitration, abandon, or otherwise adjust any claims or litigation against or in favor of the trust.

8.6    The Trustee shall have the power to commence or defend litigation with respect to the trust estate, as the Trustee may deem advisable, at the expense of the trust.

8.7    All powers, duties, and immunities of the Trustee shall continue after termination of any trust and until the

-18-

Trustee has made actual distribution of the property of such trust.

8.8     Unless the Trustee receives written notice of the occurrence of an event affecting the beneficial interests of the trust, the Trustee shall not be liable to any beneficiary for any distributions made or other actions taken by the Trustee in good faith.

8.9     With the consent of the Trustee, any third party may add additional property at any time to any trust.

8.10    California law shall govern the validity, construction, interpretation, and administration of all trusts under this instrument.

8.11    The Settlor has not made any agreement (other than this instrument) controlling the disposition of the trust estate, and the provisions of this trust shall not be read as evidence of any such agreement.

### ARTICLE 9
### CONTEST, DISINHERITANCE, DEFINITIONS

9.1     Except for the possibility of the remainder gift to Togo Wesley Tanaka and Christine Ann Tanaka set forth hereinabove, the Settlor specifically and with full knowledge of the consequences, disinherits and leaves nothing to Wesley Tanaka and Christine Ann Tanaka.

9.2     If any beneficiary under this instrument, singularly or in combination with any other person or persons, directly or indirectly does any of the following acts, then the right of that person to take any interest given to him or her by this instrument shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she has predeceased the Settlor without issue:

        (a)  Contests this instrument or the will of the Settlor in whole or in part or opposes, objects to, or seeks to invalidate any of the provisions of this instrument or of the will of the Settlor;

        (b)  Unreasonably files any creditor's claim or prosecutes any action against the trust for any debt alleged to be owed by the Settlor;

-19-

(c)  Claims entitlement by way of any written or oral contract;

(d)  Challenges the validity of any declaration of trust, contract, agreement (including any trust agreement), beneficiary designation, or other document executed by the Settlor, or for her benefit, or executed by another for the benefit of the Settlor that is part of an integrated estate plan;

(e)  Unreasonably brings any action for any settlement or compromise affecting the terms of this instrument or any instrument described in subsection (d) of this section;

(f)  Seeks to limit the trustee's powers;

(g)  Conspires with or voluntarily assists anyone attempting to do any of these things;

(h)  Refuses a request of any trustee to assist in the defense of any such proceeding;

(i)  Files any action or proceeding to determine the character or ownership of any trust or estate asset different than any schedule attached to this instrument;

(j)  Files any action or proceeding disputing title of any trust or estate asset;

(k)  Files any claim or action brought against Settlor's trust or estate or any beneficiary of this instrument or any will or codicil of Settlor based upon a claim of breach of promise to leave by will or trust or "Marvin" type claim; or, files any will or codicil of Settlor based upon a claim of breach of promise to leave by will or trust or "Marvin" type claim; or,

(l)  Files any action against the donee of any inter vivos gift made by Settlor challenging the validity of such gift.

9.3  Any notices which the Trustee desires or is required to give pursuant to this instrument shall be deemed conclusively given forty-eight (48) hours after deposit

of any such notice in the mails, certified mail, postage prepaid, (except that if there is no certified mail then functioning, then ordinary or air mail shall be sufficient), and if not mailed, upon the actual receipt thereof by the beneficiary. Notice to beneficiaries of the trust estate who at the time of said notice are receiving, or are then entitled in the discretion of the Trustee, to the benefit of, distributions hereunder, shall be deemed notice to, and shall be binding upon, all beneficiaries, including any unborn or continent beneficiaries.

9.4     No person dealing with the Trustee shall be bound to see to the application or disposition of cash or other property transferred to the Trustee or to inquire into the authority for, or propriety of, any action by the Trustee.

9.5     If any provision or provisions of this The King Trust be invalid or be held illegal or unenforceable, then notwithstanding any invalidity, illegality or unenforcability of such provision or provisions, the remainder of this KING TRUST shall subsist and shall be in full force and effect as though such invalid, illegal or unenforceable provisions had been omitted from this instrument.

9.6     For all gifts under this instrument, the beneficiary must survive the Settlor for thirty (30) days before entitlement to such gifts.

9.7     All of the Trustee's powers, duties, and immunities shall continue after termination of any trust until the Trustee has made actual distribution of the trust estate; provided, however, the Trustee's immunities shall continue to survive distribution.

9.8     If a court or governmental agency determines that this trust disqualifies the income beneficiary from any entitlement benefits or if the Trustee determines that this trust disqualified the income beneficiary from any entitlement benefits or if the Trustee determines that the trust may be subject to garnishment, attachment, execution, or bankruptcy proceedings by a creditor, including any governmental agency, then the Trustee, in the Trustee's absolute discretion, shall evaluate the financial loss compares to continuing the trust benefits to determine whether to maintain the trust or distribute the estate according the distribution provisions

contained in this trust.

9.9        As used in this instrument, the terms are defined as follows:

"Descendants" shall mean lineal descendants in any degree of the ancestor designated and shall include persons adopted during minority.    Descendants shall not include adult adoptions.

"Brothers and sisters" shall include half-brothers and half-sisters if those persons are lineal descendants of the Settlor.

"Trust," "trusts," and "trust estate" shall be interpreted in the singular or plural as the context indicates.

"Education expenses" shall include the cost of elementary, secondary, college, university, postgraduate study, seminars, individual or independent research or study, and travel for foreign study.  The Trustee may also consider the beneficiary's related living expenses and travel expenses to the extent they are reasonable.

"Death taxes" shall include federal, foreign, state, and local estate and inheritance taxes, including penalties and interest, but not generation-skipping or special use valuation recapture taxes or marital deduction qualified terminable interest attribution.

"Disclaimer" or "qualified disclaimer" has the same meaning that "qualified disclaimer" has under the Internal Revenue Code and supporting regulations.

The masculine, feminine, or neuter gender and the singular or plural number shall each include the others whenever the context indicates.

"Beneficiary's other resources" shall include the beneficiary's employable skills and a third party's support obligations.

"Primary beneficiary" is a beneficiary whose interests and needs the Trustee shall consider to be paramount over the other designated beneficiaries in the class.

9.10       Clause headings, if any, are for reading convenience and shall be disregarded when construing this instrument.

## ACKNOWLEDGMENT FOR SETTLOR

COUNTY OF LOS ANGELES          )

STATE OF CALIFORNIA            )

    On _June 5, 2009_ , before me, *Kristine Soares* the undersigned Notary Public, personally appeared JEAN TANAKA, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.



                                        _____
                                    Notary Public

## ACKNOWLEDGMENT FOR TRUSTEE

COUNTY OF LOS ANGELES          )

STATE OF CALIFORNIA            )

    On _June 5, 2009_ before me, the undersigned Notary Public, personally appeared JEANNIE TANAKA, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.



                                        _____
                                    Notary Public

-24-

## ARTICLE 10
### EXECUTION AND ACKNOWLEDGMENT

The Settlor certifies that the Settlor has read the foregoing The Jean Tanaka Trust and that it correctly states the terms and conditions under which the Trustee is to hold, manage, and distribute the trust estate.  The Settlor approves the instrument in all particulars and requests that the Trustee sign it.

DATED: *June 5, 2009*

_____
JEAN MIHO TANAKA, Settlor

**The trustee accepts this appointment.**

Dated: *6/5/09*



_____
JEANNIE TANAKA


**ATTORNEY FOR JEAN MIHO TANAKA.**

Dated: *6/5/09*


_____
HUGH DUFF ROBERTSON
1125 Gayley Ave
Los Angeles, CA 90024
(310)824-0467
Attorney for Settlor

## TRANSFER OF PERSONAL PROPERTY INTO TRUST

I, the undersigned Settlor, hereby grant, transfer, and deliver to Jeannie Tanaka, as trustee of The Jean Tanaka Trust, all of my property, wherever situated to become a part of the trust estate held under that trust for the benefit of Jean Tanaka subject to all its terms.

DATED: *June 5, 2009*

*Jean Tanaka*
JEAN TANAKA, Settlor

I, Jeannie Tanaka, the undersigned trustee, hereby accept the foregoing transfer.

*Jeannie Tanaka*
JEANNIE TANAKA, Trustee

-25-

## EXHIBIT "A"

1.    All bank accounts, savings accounts, certificates of deposit, shares of money market or mutual funds and other cash or cash equivalents.

2.    All stocks, bonds, indentures and other securities, whether held by the Trustor or in one or more brokerage street accounts.

3.    All legal, equitable and beneficial ownership in any real estate, whether improved or unimproved and wherever located, specifically including all real estate located in the State of California.

4.    All proprietorships and partnerships and joint venture interests, both limited and general.

5.    Except for any life insurance policies on the life of the Settlor, any and all other properties and rights to properties of every kind whatsoever; it being the intention of the Settlor that all such properties and rights to properties, whether now owned or later received, be included in The Jean Tanaka Trust.

6.    All personal property and other things of value.

RECORDING REQUESTED BY:

HUGH DUFF ROBERTSON, ESQ.

AND WHEN RECORDED MAIL TO:

HUGH DUFF ROBERTSON, ESQ.
ROBERTSON + LUM, LLP
1125 GAYLEY AVE.
LOS ANGELES, CA 90024



APN: 4360-006-009                                              SPACE ABOVE THIS LINE FOR RECORDER'S USE

# QUIT CLAIM DEED

THE UNDERSIGN GRANTOR(S) DECLARE(S):     DOCUMENTARY TRANSFER TAX IS $     NONE, SEE BELOW
_____ Computed on full value of property conveyed, or
_____ Computed on full value less liens and encumbrances remaining at time of sale.
_____ Unincorporated area _____ City of _____

For valuable consideration, receipt of which is hereby acknowledged,

    JEAN M. TANAKA, a.k.a JEAN MIHO TANAKA

hereby REMISE(S), RELEASE(S) AND QUITCLAIM(S) to

    THE JEAN TANAKA TRUST

THIS CONVEYANCE TRANSFERS THE GRANTOR'S
INTEREST INTO THEIR REVOCABLE LIVING
TRUST, R & T 11911.

the real property situated in the County of Los Angeles, State of California, more particularly described as
follows:

    Lot 9, in block 12 of tract no. 9070, in the City of Los Angeles, County of Los Angeles,
    State of California, as per map recorded in book 121, pages 42 to 46 inclusive of maps,
    in the office of the county recorder of said county.

Dated: June 5, 2009                              *Jean M. Tanaka*
                                      JEAN M. TANAKA, a.k.a. JEAN MIHO TANAKA

STATE OF CALIFORNIA                              }
COUNTY OF LOS ANGELES                            } SS.

On June 5, 2009 before me, KRISTINE SOARES _____, a Notary Public, personally
appeared JEAN M. TANAKA _____ who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity (ies), and that by his/her/their signatures on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal

*Kristine Soares*

                                      (SEAL)

MAIL TAX STATEMENTS TO ADDRESS AS SHOWN ABOVE



# LAST WILL AND TESTAMENT
## OF
## JEAN TANAKA

I, JEAN TANAKA, residing in the County of Los Angeles, State of California, being over the age of eighteen (18) years and being of sound and disposing mind and memory, and not being actuated by any duress, menace, fraud or undue influence, hereby make, publish, and declare this to be my Last Will and Testament.  I hereby expressly revoke any and all former wills and codicils heretofore made by me.

## ARTICLE 1

I was married to Togo Wesley Tanaka who passed away on May 21, 2009.  I have three (3) adult children: Togo Wesley Tanaka, Christine Ann Tanaka and Jeannie Eleanor Tanaka.

## ARTICLE 2

I hereby give, devise and bequeath my entire estate, whether real, personal, or mixed, wheresoever situated, of which I may die seized or possessed, or in which I have an interest at the time of my death, to the Trustee then in office under that trust designated as THE JEAN TANAKA TRUST U/T/D JUNE 5, 2009, which was executed immediately prior to the execution of this will (hereinafter referred to as THE JEAN TANAKA TRUST), of which I am one of the Settlors and one of the Trustees. I direct that my estate shall be added to, administered, and distributed as part of that trust, according to the terms of the trust and any amendment made to it before my death.  To the extent permitted by law, it is not my intent to create a separate trust by this will or to subject the trust or the property added to it by this will to the jurisdiction of the probate court.

If the disposition in this Article 2 is inoperative or is invalid for any reason, or if the trust referred to in this Article 2 fails or is revoked, I incorporate herein by this reference the terms of THE JEAN TANAKA TRUST, which was executed immediately prior to the execution of this will, without giving effect to any amendments made subsequently, and I bequeath and devise my entire estate to the Trustee named in the trust as Trustee, to be held, administered, and distributed as provided in this instrument.

## ARTICLE 3

I nominate as executor of this will those named below.   The term "executor" shall include any personal representative of the estate.

First Executor:   JEANNIE TANAKA

Second Executor:   NONE

I request that no bond shall be required of any executor nominated in this will.

My estate may be administered under the California Independent Administration of Estates Act.

I authorize the executor, in the executor's sole discretion, to retain any property of my estate for as long as the executor considers appropriate.   The executor shall not be liable for any loss incurred by my estate by retaining any such property.

I authorize the executor to lease all or any part of the real or personal property of my estate on such terms as the executor considers proper.

In distributing my estate or in selecting property to be distributed in satisfaction of any bequest provided by this will, the executor shall have absolute discretion to determine what property of my estate shall be allocated to the shares, parts, or bequests to be distributed.

If at the date of distribution of any property from my estate, the beneficiary of the property under my will is a minor, or under any other legal disability, or unable, in the executor's opinion, to administer the property properly by reason of mental or physical illness or disability, the executor is empowered to distribute the property, in the executor's sole discretion, to any one or more of the following persons for the benefit of the beneficiary: (a) a legally appointed guardian or conservator of the estate of the beneficiary; or (b) if the beneficiary is a minor, his or her parent or custodian under the California Uniform Transfers to Minors Act or similar statute then in effect, provided that if no custodian is then in existence, the executor is empowered to designate a custodian for this purpose from among those persons qualified to serve.   I authorize the executor to accept the receipt of any distributee in full satisfaction and discharge of the distribution of such property.

Subject to any limitation stated elsewhere in this will and to the extent I am permitted to do so by the laws of California as

-2-

they exist at the time of my death, I give my executor all of the powers of the Trustee of the trust referred to in Article 2 of this will.

The executor may employ custodians, attorneys, accountants, investment advisers, corporate fiduciaries, or any other agents or advisers (herein sometimes collectively referred to as "advisers") to assist the executor in the administration of my estate and may rely on the advice given by these agents. The estate shall pay reasonable compensation for all services performed by these agents. These payments shall not decrease the compensation to which the executor is entitled even if such advisers are employed by an entity owned by the executor or in which the executor has an inter-est or employs the executor. It is my intention that if any executor is a member of a firm which provides services to my estate or is a member of a law firm which is employed as attorneys for my estate, said executor shall be allowed the fees he or she would otherwise be entitled and, in addition the firm or law firm of which said person is a member shall be allowed appropriate fees for the services rendered by such firm. Provided always, however, that the total of the fees paid pursuant to this paragraph are reason-able and shall not exceed reasonable compensation for all services rendered.

## ARTICLE 4

The Trustee of THE JEAN TANAKA TRUST is directed by its terms to pay all taxes that may be provided because of my death and to allocate the taxes as provided in the trust. If at the time of my death that trust no longer exists or, if it does still exist but is insufficient to pay the taxes referred to in this paragraph, I direct my executor to pay the taxes that cannot be paid from THE JEAN TANAKA TRUST.

## ARTICLE 5

1.      Except as otherwise provided in this will, I have intentionally and with full knowledge omitted to provide for my heirs.

2.      If any person, directly or indirectly does any of the following acts, then any gift or other interest given to that person under this will shall be revoked and shall be disposed of as if he or she had predeceased me:

        (1) Contests this will in whole or in part, or opposes, objects to, or seeks to invalidate any of its provisions;

        (2) Unreasonably files any creditor's claim or prosecutes any action against my estate;

-3-

(3) Claims entitlement by way of any written or oral contract;

(4) Challenges the validity of any declaration of trust, contract, agreement (including any trust agreement), beneficiary designation, or other document executed by me as part of an integrated estate plan, or executed by another for my benefit;

(5) Unreasonably brings any action for any settlement or compromise affecting the terms of this will or of any instrument described in subsection (4) of this section;

(6) Seeks to limit the executor's or trustee's powers;

(7) Refuses a request of any executor or trustee, to assist in the defense of any such proceeding;

(8) Files an action or proceeding disputing title of any estate asset;

(9) Files any claim or action brought against the trust or estate or any beneficiary of this will or codicil thereto, based upon a claim of breach of promise to leave by will or trust or "Marvin" type claim;

(10) Files any action against the donee of any gift made herein challenging the validity of such gift; or

(11) Conspires with or voluntarily assists anyone attempting to do any of these things.

C.   Except when the context in this will requires otherwise, the singular includes the plural, and the masculine gender includes the feminine and neuter when referring to executors, Trustees, guardians, or custodians.

D.   If any provision of this will is unenforceable, the remaining provisions shall remain in full effect.

Signed on _June 5,_____, 2009 at Los Angeles, California.


_Jean Tanaka_
JEAN TANAKA

-4-

On the date written below, JEAN TANAKA declared to us, the undersigned, that this instrument, consisting of five (5) pages, including the page signed by us as witnesses, was her will and she requested us to act as witnesses to it. He thereupon signed this will in our presence, all of us being present at the same time. We now, at her request, in her presence and in the presence of each other, subscribe our names as witnesses. It is our belief that JEAN TANAKA is of sound mind and memory and is under no constraint or undue influence whatsoever.

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 6/5 , 2009 at Los Angeles, California.

Signature

_____

Name and Address

Hugh Duff Robertson
1125 Gayley
Los Angeles, CA 90024

Signature

_____

Name and Address

Michelle Bristol
1125 Gayley
Los Angeles, CA 90024

Signature

_____

Name and Address

Kristine Soares
1125 Gayley Avenue
Los Angeles, CA 90024

-5-

APR 7 '76

1976

When recorded mail to:
SOUTHLAND ESCROW CORPORATION
P. O. Box 6399
Burbank, Calif. 91510

**FULL RECONVEYANCE**                R- 9167

SOUTHLAND ESCROW CORPORATION, a California corporation, as Trustee, or successor Trustee, or substituted Trustee, pursuant to a Deed of Trust hereinafter more particularly described, does hereby RECONVEY all estate now held by it thereunder to the person or persons legally entitled thereto, but without warranty.

The Deed of Trust pursuant to which this Full Reconveyance is given was made by the Trustor:

GEORGE A. BEKEY and SHIRLEY W. BEKEY, his wife,

Recorded  :  April 16, 1975
Instr. No. :  2298
in Book   :  T9336                                of Official Records of
Page     :  585                  Los Angeles      County, California, in

the office of the County Recorder of said County.

SOUTHLAND ESCROW CORPORATION,
as such Trustee

By _____
            R. P. Hoorn

Dated    : April 4, 1976

County of Los Angeles  }  ss
State of California

On  April 5, 1976                    before me, the undersigned, a Notary Public in and for said
County and State, personally appeared    R. P. Hoorn              known to me to be the
authorized officer of SOUTHLAND ESCROW CORPORATION, the corporation that executed the within Instrument,
known to me to be the person(s) who executed the within Instrument on behalf of the corporation therein named,
and acknowledged to me that such corporation executed the within Instrument pursuant to its by-laws or a resolution of its board of directors.

Witness my hand and official seal.

_____
Notary Public in and for Said County and State

OFFICIAL SEAL
HELEN K. WEYENBERG
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires Jun. 6, 1977



ACCOMMODATION

RECORDING REQUESTED BY

Richard N. Bates

88    992920

AND WHEN RECORDED MAIL TO

Name    Mr. and Mrs. Togo W. Tanaka
Street    949 Malcolm Avenue
Address    Los Angeles, California 90024
City &
State

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CA
JUN 23 1988 AT 8 A.M.
Recorder's Office

MAIL TAX STATEMENTS TO

Name    Mr. and Mrs. Togo W. Tanaka
Street    949 Malcolm Avenue
Address    Los Angeles, California 90024
City &
State

FEE
$5

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

## Individual Quitclaim Deed

CAT. NO. NN00580    THIS FORM FURNISHED BY TICOR TITLE INSURERS    A.P. # 4360-006-009
TO 1922 CA (2-83)

"This conveyance transfers the grantor's interest into
their revocable living trust, R & T 11911"

The undersigned grantor(s) declare(s):
Documentary transfer tax is $ ___-0-___ (no change of ownership)
(    ) computed on full value of property conveyed, or
(    ) computed on full value less value of liens and encumbrances remaining at time of sale.
(  X ) Unincorporated area: ( X ) City of _____ Los Angeles _____ , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
TOGO W. TANAKA and JEAN M. TANAKA

hereby REMISES, RELEASES AND QUITCLAIMS to  TOGO WILLIAM TANAKA and JEAN MIHO TANAKA,
Co-Trustees of the TOGO WILLIAM TANAKA and JEAN MIHO TANAKA 1986 REVOCABLE LIVING
TRUST
the following described real property in the
County of  Los Angeles                              , State of California:

Lot 9 in Block 12 of Tract No. 9070 as per map recorded in Book 121, pages 42 to
46 inclusive, of Maps, in the Office of the County Recorder of said County.

Dated: ___6/13/88___

Togo W. Tanaka

Jean M. Tanaka

STATE OF CALIFORNIA
COUNTY OF  Los Angeles          }SS.
On  June 13, 1988          before
me, the undersigned, a Notary Public in and for said State,
personally appeared  Togo W. Tanaka and Jean
M. Tanaka
personally known to me or proved to me on the basis of sat-
isfactory evidence to be the person S  whose name S  are
subscribed to the within instrument and acknowledged
that they  executed the same.
WITNESS my hand and official seal.

Signature _____

OFFICIAL SEAL
PATRICIA E MIGLIORI
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires JUN 3, 1991

(This area for official notarial seal)

Title Order No. ___ACCOMMODATION___        Escrow or Loan No. _____

MAIL TAX STATEMENTS AS DIRECTED ABOVE

RECORDING REQUESTED BY &           94 1017826
WHEN RECORDED, RETURN TO:
D. MICHAEL TRAINOTTI, INC.
A Professional Law Corporation     ┌─────────────────────────────┐
200 Oceangate, Suite 410           │ RECORDED/FILED IN OFFICIAL RECORDS │
Long Beach, CA 90802               │    RECORDER'S OFFICE         │
MAIL TAX STATEMENTS TO:            │   LOS ANGELES COUNTY         │
Togo W. & Jean M. Tanaka           │       CALIFORNIA            │
949 Malcolm Avenue            4    │  MIN.  8 A.M. MAY 26 1994   │
Los Angeles, CA 90024              │  PAST                       │
                                   └─────────────────────────────┘

─────────────────────────────────────── A.P.N. 4360-006-009
                                                              ┌──────┐
                    GRANT DEED                                │ FEE  │
─────────────────────────────────────────────────────────── │ $7   │
Documentary Transfer Tax: 0; "This conveyance changes the manner in │  G   │
which title is held; grantors and grantees remain the same and └──────┘
continue to hold the same proportionate interest; R&T 11911."

     TOGO WILLIAM TANAKA and JEAN MIHO TANAKA, Co-Trustees of the
TOGO WILLIAM TANAKA AND JEAN MIHO TANAKA 1986 REVOCABLE LIVING
TRUST, hereby grant to TOGO W. TANAKA and JEAN M. TANAKA, husband
and wife, as community property, the following described real
property in the City of Los Angeles, County of Los Angeles, State
of California:

     Lot 9 in Block 12 of Tract No. 9070 as per map recorded in
     Book 121, pages 42 to 46 inclusive, of Maps, in the Office of
     the County Recorder of said County. (949 Malcolm Avenue)

     Executed on March 3, 1994, at Los Angeles, California.

─────────────────────────          ─────────────────────────
TOGO WILLIAM TANAKA                JEAN MIHO TANAKA

                      ACKNOWLEDGMENT

STATE OF CALIFORNIA       )
                          ) ss
COUNTY OF LOS ANGELES     )

     On this 3rd day of March, 1994, before me, Melvin Y.
Ogata                         , a Notary Public in and for said
County and State, personally appeared TOGO WILLIAM TANAKA & JEAN
MIHO TANAKA, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

     WITNESS my hand and official seal.

                          ┌─────────────────────┐
                          │   MELVIN Y. OGATA    │
                          │   COMM. # 918880     │
                          │ Notary Public — California │   ─────────────────────
(S E A L)                 │  LOS ANGELES COUNTY  │   Notary Public in and for
                          │ My Comm. Expires SEP 16, 1997 │   said County and State
                          └─────────────────────┘

              MAIL TAX STATEMENTS AS DIRECTED ABOVE

RECORDING REQUESTED BY &
WHEN RECORDED, RETURN TO:
D. MICHAEL TRAINOTTI, INC.
A Professional Law Corporation
200 Oceangate, Suite 410
Long Beach, CA 90802
MAIL TAX STATEMENTS TO:
Togo W. & Jean M. Tanaka
949 Malcolm
Los Angeles, CA 90024

**94 1017827**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
4 MIN.   8 A.M. MAY 26 1994
PAST

A.P.N. 4360-006-009

FEE
$7
G

### GRANT DEED

Documentary Transfer Tax: 0;  "THIS IS A BONAFIDE GIFT AND THE
GRANTORS RECEIVED NOTHING IN RETURN; R&T 11911."

TOGO W. TANAKA and JEAN M. TANAKA, husband and wife, as
community property, hereby grant to TOGO W. TANAKA and JEAN M.
TANAKA, Trustees of the TOGO W. TANAKA RESIDENCE TRUST, dated March
3, 1994, as to an undivided one-half (1/2) interest, and to TOGO
W. TANAKA and JEAN M. TANAKA, Trustees of the JEAN M. TANAKA
RESIDENCE TRUST, dated March 3, 1994, as to an undivided one-half
(1/2) interest, the following described real property in the City
of Los Angeles, County of Los Angeles, State of California:

Lot 9 in Block 12 of Tract No. 9070 as per map recorded in
Book 121, pages 42 to 46 inclusive, of Maps, in the Office of
the County Recorder of said County. (949 Malcolm Avenue)

Executed on March  3 , 1994, at Los Angeles, California.

_____          _____
TOGO W. TANAKA                           JEAN M. TANAKA

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

On this  3rd  day of March, 1994, before me,  Melvin Y.
Ogata                                 , a Notary Public in and for said
County and State, personally appeared TOGO W. TANAKA & JEAN M.
TANAKA, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

MELVIN Y. OGATA
COMM. # 1006189
Notary Public — California
LOS ANGELES COUNTY
My Comm. Expires SEP 16, 1997

(S E A L)                           _____
                                     Notary Public in and for
                                     said County and State

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

**This page is part of your document - DO NOT DISCARD**



# 20082135202



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/04/08 AT 08:00AM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 11.00 |

## TITLE(S) : DEED



**L E A D S H E E T**



200812040240004



001124226

**SEQ:**
**01**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

12/04/08

20082135202

**RECORDING REQUESTED BY:**

United Title/Land America
5085093967

**WHEN RECORDED MAIL TO:**

Togo and Jean Tanaka
949 Malcolm Ave.
Los Angeles, CA 90024

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 4360-006-009               **TRUST TRANSFER DEED**

**Grant Deed** (excluded from Reappraisal Under Proposition 13, i.e., Calif. Const. Art 13A§t et. Seq.)

The undersigned Grantors(s) declare(s) under penalty of perjury that the following is true and correct:
THERE IS NO CONSIDERATION FOR THIS TRANSFER.                This conveyance transfers an interest into
                                                             or out of a Living Trust, R&T 11930.
**Documentary transfer tax is $ 0.00**

☐ Computed on full value of property conveyed, or ☐ computed on full value less value of liens and encumbrances
   remaining at time of sale or transfer.
☐ There is no Documentary transfer tax due (state reason **and** give Code § or Ordinance number) R&T 11930
☐ Unincorporated area:   ☒ City of Los Angeles
**This is a Trust Transfer under §62 of the Revenue and Taxation Code and Grantor(s) has (have) checked the
applicable exclusion:**
☐ Transfer to a revocable trust;
☐ Transfer to a short-term trust not exceeding 12 years with trustor holding the revision;
☐ Transfer to a trust where the trustor or the trustor's spouse is the sole beneficiary;
☐ Change of trustee holding title;
☐ Transfer from trust to trustor's spouse where prior transfer to trust was excluded from reappraisal and for a valuable
   consideration, receipt of which is acknowledged.
☒ Other: Transfer out of Trust

**GRANTOR(S):** Togo W. Tanaka and Jean M. Tanaka, Trustees of The Togo W. Tanaka Residence Trust dated
March 3, 1994, as to an undivided one-half (1/2) interest, and to Togo W. Tananka and Jean M. Tanaka, Trustees
of The Jean M. Tanaka Residence Trust, dated March 3, 1994, as to an undivided one-half (1/2) interest
hereby **GRANT(S) to** Togo W. Tanaka and Jean M. Tanaka, Husband and Wife as Joint Tenants
**the following described real property in the County of Los Angeles, State of California**

Lot 9 in block 12 of tract no. 9070, in the City of Los Angeles, County of Los Angeles, State of California, as per
map recorded in book 121, pages 42 to 46 inclusive of maps, in the office of the county recorder of said county.

Transfer Trust Deed

1A

Dated: August 28, 2008

Togo W. Tanaka, Trustee

Jean M. Tanaka, Trustee

STATE OF CALIFORNIA                    }
                                       }ss
COUNTY OF Los Angeles                  }

On November 26, 2008                   before me

Kristy Pidwell                         , Notary Public,

personally appeared Togo W. Tanaka and Jean M. Tanaka

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

KRISTY PIDWELL
Commission # 1577377
Notary Public - California
Riverside County
My Comm. Expires May 9, 2009

(This area for official notarial seal)

Transfer Trust Deed

**This page is part of your document - DO NOT DISCARD**



**20082135203**

Pages:
0018

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/04/08 AT 08:00AM**

| | |
|---|---|
| FEES: | 62.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 62.00 |

## TITLE(S) : **TRUST DEED**



**L E A D S H E E T**

200812040240004

001124226

**SEQ:
02**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

**Commonwealth**

5685093967

12/04/08



20082135203

Recording Requested By:
World Alliance Financial Corp.
3 Huntington Quadrangle, Suite 201N
Melville, NY 11747

After Recording Return To:
World Alliance Financial Corp.
3 Huntington Quadrangle, Suite 201N
Melville, NY 11747

Loan Number: 3000020049

APN: 4360-006-009 [Space Above This Line For Recording Data] _____

**State of California**

## CALIFORNIA DEED OF TRUST

### THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN.

THIS SECURITY INSTRUMENT SECURES ALL FUTURE ADVANCES MADE BY LENDER, INCLUDING FUTURE ADVANCES OCCURRING AFTER THE LENDER HAS INITIALLY ADVANCED PRINCIPAL UP TO THE MAXIMUM PRINCIPAL AMOUNT STATED IN THIS SECURITY INSTRUMENT (OPEN-END (REVOLVING) FEATURE).

THIS SECURITY INSTRUMENT SECURES A LOAN THAT PROVIDES FOR NEGATIVE AMORTIZATION AND COMPOUNDING OF INTEREST. INTEREST THAT IS UNPAID WILL BE ADDED TO PRINCIPAL AND INTEREST WILL BE CHARGED THEREON.

DEFINITIONS

This document contains certain defined terms. Some of those terms are defined immediately below. Terms not defined below are given the meaning ascribed to them in this document or in your **Equity Plus Advantage Reverse Mortgage, Promise to Pay, Agreement and Disclosure.**

(A) **"Security Instrument"** means this document, which is dated **November 26, 2008**, together with all Riders to this document.

California Deed of Trust
Page 1

2A

(B) **"Borrower"** is **TOGO W. TANAKA AND JEAN M. TANAKA, HUSBAND AND WIFE AS JOINT TENANTS.** Borrower is the trustor under this Security Instrument. Except as otherwise provided in this Security Instrument, if the title to the Property is held in a trust in which the Borrower is the beneficiary, the term "Borrower" shall also include the trustee(s) of that trust, as applicable, except that the term "Borrower" shall not include such trustee(s) for purposes of: (a) Borrower's obligation under the Agreement or this Security Instrument to occupy and use the Property as a principal residence or dwelling, and (b) Maturity Events under the Agreement or this Security Instrument due to (i) Borrower's death, (ii) Borrower's absences from the Property as set forth in the Agreement or this Security Instrument, or (iii) the Borrower ceasing to occupy and use the Property as a principal residence or dwelling.

(C) **"Lender"** is **World Alliance Financial Corp.**, whose address is 3 Huntington Quadrangle Suite 201N, Melville, NY 11747. Lender is a CORPORATION organized and existing under the laws of New York. Lender is the beneficiary under this Security Instrument.

(D) **"Trustee"** is **LANDAMERICA TITLE COMPANY.** Trustee's address is **3480 VINE STREET SUITE 100, RIVERSIDE, CA 92507.**

(E) **"Agreement"** means the **Equity Plus Advantage Reverse Mortgage, Promise to Pay, Agreement and Disclosure** signed by Borrower and dated the same date as this Security Instrument.

(F) **"Property"** means the property that is described below in this Security Instrument.

Borrower has promised to repay to Lender the debt evidenced by the Agreement and secured by this Security Instrument. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Agreement, including all future advances that Lender is obligated to advance to Borrower under the terms of the Agreement, UP TO A MAXIMUM PRINCIPAL AMOUNT OF **Two Million Five Hundred Fifty Thousand and 00/100 Dollars** (US **$2,550,000.00**), with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Agreement; (b) unpaid interest added to the loan balance in accordance with the provisions of the Agreement, and interest that accrues thereon, commonly called "compound interest"; (c) the reimbursement of all expenditures, with interest at a rate subject to adjustment, that Lender may make for the protection of the security of its lien on the Property, or otherwise under the terms of the Agreement and this Security Instrument; and (d) the performance of Borrower's covenants and agreements under the Agreement and this Security Instrument. The full debt secured by this Security Instrument, including amounts described in (a), (b), (c) and (d) above, if not due and payable earlier, is due and payable on **March 06, 2066.**

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **Los Angeles** County, California:

[See Exhibit "A" attached hereto.]

California Deed of Trust
Page 2



which currently has the address of **949 MALCOLM AVENUE, LOS ANGELES, CA 90024** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.  Payment of Principal, Interest and Fees; Negative Amortization.**

Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Agreement, including all advances made by Lender under the terms of the Agreement, and all fees, charges and other sums due under the Agreement or this Security Instrument. **Since regular periodic payments by Borrower to Lender are not required under the Agreement and the finance charges that accrue, as well as the monthly servicing fees and other amounts Borrower may owe under the Agreement, are added to the loan balance, and in turn will accrue interest thereon at the interest rates as specified in the Agreement, negative amortization and compounding of interest will occur. Negative amortization and compounding of interest increase the amount Borrower owes Lender and reduce Borrower's equity in the Property.**

**2.  Property Charges and Liens.**

Borrower shall be responsible for the payment of all property charges, including taxes, assessments, charges, fines, and impositions attributable to the Property, hazard insurance premiums, leasehold payments or ground rents on the Property, if any, and all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization, if any.  Unless property charges are paid by Lender by withholding funds for these obligations from monthly payments due to Borrower or charging such obligations to a line of credit under the Agreement, Borrower shall pay property charges directly to the entity which is owed the payment in a timely manner and shall promptly provide evidence of payment of property charges to Lender if Lender requests such evidence.

Borrower shall promptly discharge any lien which may attain priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent

the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may stop making Advances and may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.  Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

## 3.  Property Insurance.

Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and against any other hazards including, but not limited to, loss by earthquakes and floods, for which Lender requires insurance. Lender may require Borrower to pay, in connection with the loan secured by this Security Instrument, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower. Insurance shall be obtained from an insurance carrier satisfactory to Lender.   Insurance policies and renewals of such policies shall be satisfactory to Lender and shall include a standard mortgage clause and name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates. Upon Lender's request, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  Lender is hereby authorized to verify insurance coverage with the insurance carrier and to instruct the insurance carrier to name Lender as mortgagee and/or additional loss payee, if not so named by Borrower.

Lender, at its option, may obtain insurance if Borrower fails to maintain insurance described in this Paragraph 3 or fails to provide to Lender promptly upon Lender's request evidence of satisfactory insurance coverage.  Borrower acknowledges that insurance obtained by Lender may not protect Borrower or Borrower's interest in the Property and may be more expensive than insurance that Borrower could have obtained.

In the event of loss, Borrower shall give prompt notice to Lender and the insurance carrier. Lender may make proof of loss if not made promptly by Borrower.  Borrower hereby authorizes each insurance company to make payment for loss to Lender instead of to Borrower and Lender jointly. Unless Lender and Borrower agree otherwise in writing, any insurance proceeds shall be applied to restoration or repair of the damaged Property, provided (a) Lender in good faith determines that restoration or repair within a reasonable period of time is economically feasible, (b) Lender's security is not lessened as a result of restoration or repair, and (c) Borrower is willing and able to cause the necessary restoration or repair to be performed.  If any of the above requirements are not met, Lender may, at its option, apply insurance proceeds to reduce the indebtedness under the Agreement and this Security Instrument, or apply insurance proceeds

California Deed of Trust
Page 4

toward restoration or repair of the Property. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Agreement and this Security Instrument shall be paid to the person legally entitled thereto. The provisions of this Paragraph 3 relating to the application of insurance proceeds shall apply only to the extent permitted by applicable law.

If Borrower abandons the Property or does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, Lender may settle any available insurance claim and may collect the insurance proceeds which may, at Lender's option, be applied to the reduction of the indebtedness under the Agreement and this Security Instrument, whether or not then due, or be applied toward restoration or repair of the damaged Property. The 30-day period will begin when the notice is given. If Lender acquires the Property as a result of foreclosure or otherwise under this Security Instrument, Borrower hereby assigns to Lender Borrower's rights to any insurance policies and insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement or this Security Instrument.

**4. Occupancy; Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**

Borrower shall occupy, establish, and use the Property as Borrower's principal residence during the term of the Security Instrument. Upon Lender request, Borrower shall promptly certify to Lender that Borrower occupies and uses the Property as Borrower's principal residence.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property, reasonable wear and tear excepted. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property upon the release of the proceeds by Lender for such purposes pursuant to this Security Instrument. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Borrower shall also be in default if Borrower, during the loan application process, gave materially false, misleading or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.

If this Security Instrument is on a leasehold, as defined in Paragraph 10, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Protection of Lender's Rights in the Property.**

California Deed of Trust
Page 5

If Borrower fails to make payments for property charges or fails to promptly discharge any lien which may attain priority over this Security Instrument as required by Paragraph 2, fails to perform any other covenants and agreements contained in the Agreement or this Security Instrument, or if there is a legal proceeding that may significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), then Lender may, at its option, do and pay for whatever is necessary to protect Lender's interest in the Property and rights under this Security Instrument. Although Lender may take action under this Paragraph 5, Lender is not under any duty or obligation to do so.

Lender's actions under this Paragraph 5 to protect Lender's interest in the Property and rights under this Security Instrument can include, but are not limited to: paying for taxes, hazard insurance and other items mentioned in Paragraph 2; paying any sums secured by a lien which has priority over this Security Instrument; protecting and/or assessing the value of the Property and securing and/or repairing the Property; appearing in court; paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.

Any amounts disbursed by Lender under this Paragraph 5 shall become additional debt of Borrower as provided for in the Agreement and shall be secured by this Security Instrument and shall be afforded lien priority protection as if made on the date of this Security Instrument. These amounts shall bear interest from the date of disbursement at the rate provided in the Agreement unless and until separately re-paid by Borrower from separate proceeds.

**6. Inspection.**

Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give the Borrower written notice prior to any inspection or appraisal, specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. However, if Borrower abandons the Property or the Property is vacant, Lender may enter on the Property and take any action necessary to protect Lender's interest in the Property and rights under this Security Instrument, all without notice to Borrower.

**7. Condemnation or Other Proceeds; Forfeiture.**

All compensation, settlement, award of damages, or proceeds paid by any third party for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property, other than insurance proceeds paid under Paragraph 3 of this Security Instrument ("Condemnation or Other Proceeds"), are hereby assigned to and shall be paid to Lender.

California Deed of Trust
Page 6

If the Property is damaged, such Condemnation or Other Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Condemnation or Other Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or applicable law requires interest to be paid on such Condemnation or Other Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Condemnation or Other Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Condemnation or Other Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a total taking, destruction, or loss in value of the Property, the Condemnation or Other Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Condemnation or Other Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower. In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Condemnation or Other Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due. The provisions of this Paragraph 7 relating to the application of condemnation proceeds shall apply only to the extent permitted by applicable law.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor another third party offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Condemnation or Other Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Paragraph 11, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes

forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

**8. Borrower Not Released; Forbearance By Lender Not a Waiver.**

Any waiver or forbearance by Lender in exercising any right or remedy under the Agreement or this Security Instrument shall not be a waiver of or preclude the exercise of any right or remedy by Lender at a future date.

**9. Amount Due; Non-Recourse Liability.**

Borrower shall not be personally liable for the re-payment of the amounts advanced by Lender under the Agreement and this Security Instrument. Lender may enforce the obligation under the Agreement and this Security Instrument only against the Property. In the event of foreclosure of this Security Instrument, Lender shall not seek or obtain a deficiency judgment against Borrower. However, nothing in this Paragraph 9 shall be construed to impair Lender's security interest in the Property or Lender's rights under the Agreement and this Security Instrument.

**10. Repayment of Debt.**

Lender at its option may discontinue Advances to Borrower under the Agreement and require immediate payment in full of the entire debt secured by this Security Instrument upon the occurrence of any of the following events:

(i) Borrower dies or, if there is more than one borrower, the last surviving Borrower dies;

(ii) Borrower sells or conveys title to, or any interest in, the Property;

(iii) All Borrowers cease using the Property as their principal residence;

(iv) Borrower fails to make payments for real estate taxes on the Property or for any and all dues, fees, assessments, charges, fines and impositions attributable to the Property, as required hereunder;

(v) Borrower fails to make payments for hazard insurance covering the Property, as required hereunder;

(vi) Borrower fails to maintain or repair the Property, as required under this Security Instrument;

(vii) Borrower fails to promptly discharge any lien which may attain priority over this Security Instrument, as required under this Security Instrument;

(viii) Any other obligation, covenant or agreement of Borrower under the Agreement or this Security Instrument is not performed;

(ix) A subsequent and subordinate lien on the Property is placed or granted by Borrower without Lender's prior express consent in writing, making specific reference to the lien and the lienor.

California Deed of Trust
Page 8

However, a sale or conveyance shall not be deemed to have occurred for purposes of this Paragraph 10 (ii) if the sale or conveyance is to an original Borrower who continues to occupy the Property as a principal residence and retains interest in the Property that is (a) a fee simple, (b) a leasehold under a long-term lease, (c) a life estate, or (d) a beneficial interest in a trust owning all or part of the Property. In addition to the preceding sentence, the following shall not constitute a conveyance for purposes of this Paragraph 10 (ii): (a) a conveyance of an original Borrower's interest in the Property to a trust in which that Borrower is the beneficiary, (b) a conveyance of an original Borrower's interest in the Property that vests a life estate in that Borrower with remainder to that Borrower's heirs, and (c) a conveyance of a trustee's interest in the Property to at least one of the original Borrowers. For purposes of this Paragraph, an original Borrower is a Borrower who signed the Agreement at closing and who is a natural person. A long-term lease is a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower who is a natural person.

Borrower shall not be deemed to have ceased occupying the Property as a principal residence for purposes of this Paragraph 10 (iii) in the event of (a) a temporary absence by Borrower from the Property not exceeding 60 consecutive days for any reason; (b) an extended absence by Borrower for a period of 61 consecutive days or more, but less than one year, if Borrower notifies Lender of the absence and makes arrangements satisfactory to Lender to care for the Property during the period of the absence.

The events listed in this Paragraph 10 (i), (ii) and (iii) shall be known as "Maturity Events." Borrower shall notify Lender immediately in writing when any of the events in this Paragraph 10 occur, or make provision to have an administrator, devisee, executor, heir, legatee or personal representative of Borrower who is living and is duly appointed as such do so upon Borrower's death. If one or more of the events listed in this Paragraph 10 (ii) or (iii) occur, Lender shall give Borrower a notice that all sums secured by this Security Instrument are immediately due and payable. If upon receipt of such notice Borrower fails to pay the sums due under the Agreement and secured by this Security Instrument, Lender may invoke any remedies permitted by this Security Instrument, including the remedies provided in Paragraph 22 of this Security Instrument, without further notice or demand on Borrower.

**11. Reinstatement.**

If Borrower meets certain conditions, Borrower shall have the right to reinstate the loan and have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument (or such other period as applicable law might specify for the termination of Borrower's right to reinstate); or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) cures any default of any covenant or agreement under the Agreement or this Security Instrument; (b) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees and expenses properly associated with the foreclosure proceeding; and (c) takes such action as Lender may reasonably require to ensure that Lender's interest in the Property and rights under this Security

California Deed of Trust
Page 9

Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. The provisions of this Paragraph 11 relating to the Borrower's right to reinstate the loan shall apply only to the extent permitted by applicable law. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if Lender had not required immediate payment in full of the entire balance secured by this Security Instrument. However, the Borrower's right to reinstate under this Paragraph 11 shall only apply if Lender required immediate payment in full of the entire balance secured by this Security Instrument upon the occurrence of an event specified in Paragraph 10 (iv) through (ix).

**12. Successors and Assigns; Joint and Several Liability; Co-signers.**

The covenants and agreements of the Agreement and this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Agreement, except to a trust in which that Borrower is the beneficiary. Anyone who co-signs this Security Instrument but does not execute the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent. Borrower's covenants and agreements under the Agreement and this Security Instrument shall be joint and several.

**13. Notices.**

Any notice to Borrower under the Agreement or this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law or provisions of the Agreement or this Security Instrument require the use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 13. Borrower may request that an additional copy of any notice under this Security Instrument be mailed to a person designated by Borrower by providing to Lender prior written notice of the name and mailing address of such person.

**14. Loan Charges.**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower or, at the election of Lender, will be applied to reduce the sums owed under the Agreement.

California Deed of Trust
Page 10

**15.  Governing Law; Severability.**

This Security Instrument shall be governed by the law of the jurisdiction in which the Property is located, except where preempted by federal law.  In the event that any provision or clause of this Security Instrument or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Agreement are declared to be severable.

**16.  Hazardous Substances.**

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**17.  Sale of Agreement; Change of Loan Servicer**

The Agreement or a partial interest in the Agreement (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that distributes the payments to Borrower under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and applicable law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Agreement.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information required by applicable law.  If the Agreement is sold and thereafter the Loan is



serviced by a Loan Servicer other than the purchaser of the Agreement, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Agreement purchaser unless otherwise provided by the Agreement purchaser.

**18. Continuation of Lien Status.**

Unless the Lender expressly consents in writing, making specific reference to the lien and the lienor, Borrower covenants as part of this transaction, not to place or grant a subsequent and subordinate lien on the Property. If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the sums secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which Advances under the terms of the Agreement retain the same lien priority initially granted to Advances has expired) and state law permits the original lien status to be maintained for future advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except this Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**19. Future Advances.**

In addition to any other debt or obligation secured by this Security Instrument, this Security Instrument secures all future advances occurring under the terms of the Agreement and/or this Security Instrument to the same extent as if such future advances were made on the date this Security Instrument was recorded, irrespective of the date of any such future advance. Lender's responsibility to make Advances under the terms of the Agreement shall be deemed obligatory.

Protective Advances made by Lender at Lender's sole discretion under the terms of the Agreement and/or this Security Instrument for the protection of the security of its lien on the Property, including, but not limited to, advances for real estate taxes on the Property and hazard insurance covering the Property, shall not be deemed obligatory, however, Lender may make such payments when necessary, and reimbursement of such expenditures is secured by this Security Instrument with the same priority as if such payments had been disbursed on the date this Security Instrument was recorded.

**20. Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument.

**21. Reserved.**

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

California Deed of Trust
Page 12



**22. Acceleration; Remedies.**

If one or more of the events in Paragraph 10 occur, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 10 (i), (ii) and (iii) unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default under Paragraph 10 (iv) through (ix) is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.**  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey

California Deed of Trust
Page 13



the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law. If the fee charged does not exceed the fee set by applicable law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by applicable law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**26. Riders to this Security Instrument.**

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

| | | | |
|---|---|---|---|
| | Condominium Rider | | PUD Rider |
| | 1-4 Family Rider | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

*The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to him at the address of the Borrower set forth above. A copy of any Notice of Default and any Notice of sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.*

Dated: 11-26-08

California Deed of Trust
Page 14

16

X _Togo W Tanaka_                         X _Jean M. Tanaka_
**TOGO W. TANAKA (Borrower)**              **JEAN M. TANAKA**

_____ **[Space Below This Line for Acknowledgment]** _____

**Notary Acknowledgement**

State of California
County of **Los Angeles**
On **November 26, 2008** before me, **Togo W Tanaka**, a Notary Public, personally appeared **TOGO W. TANAKA and JEAN M. TANAKA**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        **[SEAL]**
                                  **(This area for official notary seal)**

```
KRISTY PIDWELL
Commission # 1577377
Notary Public - California
Riverside County
My Comm. Expires May 9, 2009
```

**NOTARY MUST PRINT OR TYPE**
This must be printed or typed in a manner that is photographically reproductible (GC27201.5)

Name of the Notary: **Kristy Pidwell**

County of notary's principal Place of business: **Riverside**

Notary's phone number: **909-717-4925**

Notary's registration number: **1577377**

Commission expiration date: **May 9, 2009**

California Deed of Trust
Page 15

*17*

| |
|---|
| Title of Document: |
| Date of Document: _____ No. of Pages |
| Other Signatures not acknowledged: |

### REQUEST FOR RECONVEYANCE

**TO TRUSTEE:**

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by your under this Deed of Trust to the person or persons legally entitled thereto.

Signature_____

California Deed of Trust
Page 16

ORDER NO  50850939-67

## EXHIBIT "A"

LOT 9 IN BLOCK 12 OF TRACT NO. 9070, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER
MAP RECORDED IN BOOK 121, PAGES 42 TO 46 INCLUSIVE OF MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**This page is part of your document - DO NOT DISCARD**



## 20091003613

Pages:
0002

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**07/02/09 AT 04:20PM**

| | |
|---|---|
| FEES: | 13.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 13.00 |



**L E A D S H E E T**



200907020060093

00000799495



002185117

**SEQ:
01**

**DAR - Mail (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

2

RECORDING REQUESTED BY:

    HUGH DUFF ROBERTSON, ESQ.

AND WHEN RECORDED MAIL TO:

    HUGH DUFF ROBERTSON, ESQ.
    ROBERTSON + LUM, LLP
    1125 GAYLEY AVE.
    LOS ANGELES, CA 90024



07/02/2009

*20091003613*

APN: 4360-006-009

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# QUIT CLAIM DEED

THE UNDERSIGN GRANTOR(S) DECLARE(S):

DOCUMENTARY TRANSFER TAX IS $ ___NONE, SEE BELOW___
_____ Computed on full value of property conveyed, or
_____ Computed on full value less liens and encumbrances remaining at time of sale.
_____ Unincorporated area _____ City of _____

For valuable consideration, receipt of which is hereby acknowledged,

    JEAN M. TANAKA, a.k.a JEAN MIHO TANAKA

hereby REMISE(S), RELEASE(S) AND QUITCLAIM(S) to

    THE JEAN TANAKA TRUST

THIS CONVEYANCE TRANSFERS THE GRANTOR'S
INTEREST INTO THEIR REVOCABLE LIVING
TRUST, R & T 11911.

the real property situated in the County of Los Angeles, State of California, more particularly described as follows:

    Lot 9, in block 12 of tract no. 9070, in the City of Los Angeles, County of Los Angeles,
    State of California, as per map recorded in book 121, pages 42 to 46 inclusive of maps,
    in the office of the county recorder of said county.

Dated: _June 5, 2009_

_Jean M. Tanaka_
JEAN M. TANAKA, a.k.a. JEAN MIHO TANAKA

STATE OF CALIFORNIA                    }
COUNTY OF _LOS ANGELES_          } SS.

On _June 5, 2009_ before me, _KRISTINE SOARES_ _____, a Notary Public, personally appeared _JEAN M. TANAKA_ _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

(SEAL)

WITNESS my hand and official seal

_Kristine Soares_

MAIL TAX STATEMENTS TO ADDRESS AS SHOWN ABOVE



11

*[If completed by an individual or individual and spouse]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

| Date | _____ | Signature of Debtor | _____ |
|------|------------------------|---------------------|------------------------|
| Date | _____ | Signature of Joint Debtor (if any) | _____ |

---

*[If completed on behalf of a partnership or corporation]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

| Date | 09-02-11 | Signature | *Jeannie Tanaka* |
|------|----------|-----------|-------------------|
|      |          | Print Name and Title | Jeannie Tanaka, Trustee |

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

0 ___ continuation sheets attached

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

---

### DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

| _____ | _____ |
|------------------------|------------------------|
| Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer | Social-Security No. (Required by 11 U.S.C. § 110.) |

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social-security number of the officer, principal, responsible person, or partner who signs this document.*

_____
Address

| _____ | _____ |
|------------------------|------------------------|
| Signature of Bankruptcy Petition Preparer | Date |

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 18 U.S.C. § 156.*